2005 VT 53

**TRAVELERS INSURANCE COMPANIES and Greyston Bakery, Inc. v. DEMARLE, INC., USA**

[878 A.2d 267]

No. 03-527

¶ 1. May 4, 2005. Plaintiffs Travelers Insurance Companies and Greyston Bakery, Inc. appeal the superior court's order granting defendant Demarle, Inc., USA summary judgment and dismissing plaintiffs' lawsuit alleging that Demarle sold Greyston defective baking mats that contaminated Greyston's food products. The trial court concluded that plaintiffs failed to allege facts from which they could prove that defective or warranted mats caused the contamination. We affirm.

¶ 2. Greyston is a New York corporation that manufactures baked goods and sells them to other companies, primarily Ben & Jerry's Homemade, Inc., for incorporation into other products such as ice cream. In early October 1997, Ben & Jerry's noticed small fibers in brownies that it had purchased from Greyston. After notifying Greyston of the problem,

Ben & Jerry's disposed of approximately 47,000 gallons of potentially contaminated ice cream and yogurt worth an estimated $600,000. Greyston's ensuing investigation revealed that the silicon-based baking mats it used to keep the brownies from sticking to its oven pans had caused the contamination. Greyston had been purchasing the baking mats, called Silpats, from Demarle since 1993. During the first week of October 1997, after discovering the contamination, Greyston disposed of its entire stock of Silpats. On October 22, Greyston informed Demarle that Ben & Jerry's had found fibers from the Silpats in Greyston's brownies. Eventually, Greyston and its insurer, Travelers Insurance Companies, paid Ben & Jerry's over $450,000 in exchange for an assignment of any rights the ice cream manufacturer had against Demarle. Plaintiffs then sued Demarle based on claims of products liability, breach of warranty, negligence, and indemnity and contribution. The superior court granted Demarle's motion for summary judgment and dismissed plaintiffs' claims, ruling that (1) with respect to the products liability and breach-of-warranty claims, plaintiffs failed to demonstrate that they would be able to prove by a preponderance of the evidence that defective or warranted mats caused the contamination; (2) the negligence claim was foreclosed by the economic-loss rule; and (3) the indemnity and contribution claims were dependent on the other causes of action that had been dismissed.

¶ 3. On appeal, plaintiffs do not challenge the superior court's dismissal of their negligence claim, but argue that they presented genuine issues of material fact creating a jury question as to whether Demarle breached express and implied warranties by selling Greyston defective Silpats. The issue for this Court, then, is whether the superior court erred by ruling, as a matter of law

based on plaintiffs' alleged facts, that plaintiffs would be unable to prove causation by a preponderance of the evidence. In an appeal from a summary judgment ruling, we apply the same standard as that applied by the trial court; therefore, we must determine whether genuine issues of material fact exist and, if not, whether any party is entitled to judgment as a matter of law. *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 466, 724 A.2d 454, 455 (1998). If we conclude that there are "genuine issues of material fact, within the meaning of V.R.C.P. 56(c), we must reverse the decision granting summary judgment." *Messier v. Metro. Life Ins. Co.*, 154 Vt. 406, 409, 578 A.2d 98, 99 (1990). In deciding whether there are genuine issues of material fact, we regard the facts asserted in opposition to summary judgment as true as long as they are supported by affidavits or other evidentiary material. *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987). The moving party has the burden of proof, and the opposing party is "'given the benefit of all reasonable doubts and inferences in determining whether a genuine issue [of material fact] exists.'" *Messier*, 154 Vt. at 409, 578 A.2d at 100 (quoting *Weisburgh v. Mahady*, 147 Vt. 70, 72, 511 A.2d 304, 305 (1986)).

¶ 4. Here, to the extent that warranties existed,* the parties agree that Demarle

---

* The superior court rejected Demarle's argument that it had disclaimed any and all warranties in language on the reverse side of its invoices. Demarle did not file a cross-appeal, but contends that because it was content with the final judgment dismissing all of plaintiffs' claims, it did not have to cross-appeal to preserve its challenge to the superior court's ruling on the alleged disclaimer. See *Huddleston v. Univ. of Vermont*, 168 Vt. 249, 255, 719 A.2d 415, 419 (1998). Because we

warranted the Silpats for one year (or 1000 to 2000 uses) based on Greyston's anticipated needs. The trial court ruled that, accepting plaintiffs' alleged facts as true, plaintiffs would be able to show, at best, only a mere possibility that the contamination was caused by mats that had been in use for less than one year. The court arrived at this conclusion based on the following facts: (1) the "system" that Greyston employed to detect and remove worn-out mats from its manufacturing process was nothing more than a sporadic visual inspection that did not track the age or use of any individual mat used in production; and (2) Greyston destroyed all of the mats in both production and reserve immediately after Ben & Jerry's discovered the contamination, so that neither plaintiffs nor defendant could identify the age and condition of the mats in production at the time of the contamination. According to the court, no Greyston employee offered any personal knowledge linking fibers to mats that were in use for less than one year, and Greyston's hit-or-miss visual inspection replacement system could suggest only the possibility that the contamination resulted from mats that had been used for less than one year. Further, the court rejected Demarle's mathematical probability argument, which presumed that mats in use for less than one year had caused at least some of the contamination because Greyston had only approximately 400 mats in production at any given time and had purchased over 1700 mats in the four years preceding the contamination, including 500 mats shortly before the contaminated brownies were manufactured. In the court's

---

are affirming the superior court's order granting Demarle summary judgment based on plaintiffs' failure to allege facts sufficient to prove causation, we need not address these issues.

view, this argument again raised only a mere possibility that mats in use for less than one year had caused the contamination, and a mere possibility was insufficient to support a judgment based on a showing of causation by a preponderance of the evidence.

¶ 5. On appeal, plaintiffs contend that they alleged facts from which a rational jury could conclude that the mats in use in September 1997, when the brownies were contaminated, had been in use for less than one year. The principal piece of evidence that plaintiffs rely on is a single sentence in a so-called "chronology of events" purportedly written by Greyston's president and CEO in the fall of 1997 and apparently attached to deposition testimony that was submitted to the trial court in opposition to Demarle's summary judgment motion. For a variety of related reasons, we conclude that plaintiffs may not rely on this statement on appeal to demonstrate that a genuine issue of material fact exists.

¶ 6. Under V.R.C.P. 56(c)(2), the party opposing summary judgment must include, along with an affidavit and memorandum, a "concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." All statements made by the moving party are "deemed to be admitted unless controverted by the statement required to be served by the opposing party." *Id.* The reason for requiring a concise statement of disputed material facts "is to focus more directly the arguments on motions for summary judgment by requiring specifications by the parties as to the facts that they contend either are or are not in dispute." Reporter's Notes, 1995 Amendment, V.R.C.P. 56. Further, affidavits opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated

therein." V.R.C.P. 56(e). "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id.* Rule 56(c)(3) makes it

> clear that while entitlement to summary judgment is based on a review of the pleadings and other documents in the record, the relevant provisions of those documents must be referred to in the statement of material facts required by Rule 56(c)(2) in order for them to be considered by the court in ruling on the motion. The effect ... is to put attorneys on notice that they must include in their Rule 56(c)(2) statements all of the facts that they have relied on in support of or in opposition to summary judgment, and that facts that are omitted from their statements will not be considered by the court in ruling on the motion.

Reporter's Notes, 2003 Amendment, V.R.C.P. 56.

¶ 7. Here, in one of several depositions he gave, Greyston's CEO apparently referred to a "chronology of events" that he allegedly wrote contemporaneously with the events that led to this lawsuit. The two-page, single-spaced chronology was neither signed nor averred by the CEO. The chronology was attached to the deposition testimony that referred to it, but the testimony did not concern the statement in the chronology that plaintiffs now heavily rely upon. In the middle of the chronology setting forth the events that took place after the contaminated brownies were discovered, the following statement is made:

> For the record we have used this product since at least 1994 (we are checking the exact date). We have purchased several thousand over the years. The distributor informed us this week that each mat is good for 2000 uses, which for us is 10-11 months of production. We rotate them every 6-9 months as well as individually if we perceive a defect.

¶ 8. For the first time on appeal, plaintiffs rely on the last sentence of this aside in the chronology to argue that they have raised a genuine issue of material fact with respect to causation. As noted, the chronology is unsigned and is not part of an affidavit. Further, there is no foundation for the statement — no indication that it was made based on personal knowledge or that the CEO was competent to testify on such matters. Indeed, several assertions within the above-quoted passage, including the last sentence relied upon by plaintiffs on appeal, contradict the CEO's deposition testimony and other facts plaintiffs alleged before the trial court. For example, under oath in deposition testimony, the CEO conceded, among other things, that (1) Greyston had no record of how much individual Silpats had been used in its production process; (2) Greyston had done nothing to match up individual Silpats with invoices to determine how long they had been used; (3) before 1997, he had not been engaged in the production operation at a level of detail to know whether there was a criterion or standard that Greyston employed to determine when a Silpat should be replaced; (4) he could not tell how long the Silpats in production at the time of the contamination had been in use; (5) he made no log of when any Silpat was removed from production; and (6) he had no way of knowing in 1997 how long the Silpats that he took out of production following the contamination had actually been used.

¶ 9. Not only was the statement in the chronology inconsistent with the CEO's

deposition testimony, but plaintiffs neither alleged that "fact" in a statement of disputed facts nor argued to the trial court in their memorandum opposing summary judgment that Greyston had a system for rotating all of the Silpats out of production every six-to-nine months. Rather, they argued that Greyston's pattern of purchasing Silpats created a mathematical probability that the contamination resulted from Silpats less than one year old — a probability that was sufficient to satisfy their burden at trial and to be accepted by a reasonable jury. We conclude that plaintiffs cannot rely on the isolated comment in the chronology, given that it was unverified and without foundation, was not alleged in a statement of disputed material facts or otherwise brought to the trial court's attention, and was directly contrary to the CEO's deposition testimony. See *Tetreault v. Greenwood*, 165 Vt. 577, 578, 682 A.2d 949, 949 (1996) (mem.) ("It is well settled that a party opposing summary judgment must inform the trial court of legal and factual reasons for the opposition, at risk of losing the motion and waiving the unvoiced reasons on appeal."); 10B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738, at 335 (1998) (court may consider whether conflict between affidavit and deposition testimony creates credibility issue preventing summary judgment from being entered); cf. *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

¶ 10. The question remains whether the trial court erred by concluding that plaintiffs' pattern-of-purchasing evidence was insufficient to create a jury question

on causation. We find no error. Plaintiffs' evidence as to its pattern of purchasing Silpats raises, at best, a mere possibility that Silpats used for less than one year caused some of the contamination. With no Silpats and no evidence of any system in place assuring that all Silpats were taken out of production within one year of use, plaintiffs have not alleged facts that can ultimately satisfy their burden of proving by a preponderance of the evidence that defective or warranted Silpats caused the contamination. Moreover, we find unavailing plaintiffs' argument that the magnitude of the contamination, when considered in light of the number and timing of Greyston's purchase of Silpats, is sufficient evidence to create a jury question on causation. First, there are very few alleged facts concerning the scope of the contamination. Although we know that Ben & Jerry's discarded 47,000 pounds of ice cream and 84,000 pounds of brownies, the scope of the disposal may reflect a business decision rather than the actual level of contamination. Indeed, in his "chronology of events," Greyston's CEO states that Ben & Jerry's discarded an entire day's production of brownies if even one Silpat thread was found in one of two fifteen-pound boxes opened. Second, even if the contamination was widespread, that fact would not demonstrate that any of it was caused by Silpats in use for less than one year. While we agree with plaintiffs that causation in a products liability or warranty case can be proved through circumstantial evidence, see *Hall v. Miller*, 143 Vt. 135, 140-41, 465 A.2d 222, 225 (1983) (finding circumstantial evidence to be sufficient to prove causation in breach-of-implied-warranty action), in this case plaintiffs failed to adduce evidence, even when given the benefit of all reasonable doubts and inferences, from which a reasonable jury could determine that warranted or defec-

tive Silpats caused the contamination that led to their losses.

*Affirmed.*