2011 VT 64

# In re Estate of Nancy B. Alden v. Julia Dodge Alden Dee and Todd Howard Alden v. Seth Alger Alden and Cornelia Dodge Alden

[35 A.3d 950]

No. 10-205

Present: Dooley, Johnson, Skoglund and Burgess, JJ., and Crawford, Supr. J., Specially Assigned

Opinion Filed July 8, 2011

Motion for Reargument Denied September 22, 2011

*Kevin M. Henry, Jon R. Eggleston,* and *Gary F. Karnedy* of *Primmer Piper Eggleston & Cramer PC,* Burlington, for Plaintiffs-Appellees.

*James B. Anderson* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendants-Appellants.

¶ 1. **Skoglund, J.** This case stems from a dispute over the 1973 William C. Alden Trust (the Trust) benefitting grantor's second wife Nancy Alden, his two children by Nancy, and his three children from his first marriage. Todd Alden and Julia Alden Dee, two of grantor's children by his first marriage, allege that Nancy, in her capacity as trustee, acted fraudulently and in violation of her fiduciary duties in her administration of the Trust and invaded trust principal through self-dealing, concealment, and misrepresentations, thereby damaging Todd and Julia's trust interests. They sought to hold Nancy and her two children liable for damages resulting from the alleged improprieties. The parties filed cross-motions for summary judgment, and the trial court granted that of the plaintiff/counterclaim-defendant, Estate of Nancy B. Alden. Julia Dee and Todd Alden, collectively defendants, appeal. We affirm.

¶ 2. The case began in December 2006, when Nancy Alden, as co-trustee and beneficiary of the Trust, filed a complaint for declaratory judgment seeking to release and replace the Trust's two other co-trustees. Julia and Todd withheld their consent to the substitution. In February 2007, Nancy Alden filed a revised complaint naming them as defendants.

¶ 3. In April 2007, the trial court issued an order confirming the parties' stipulated agreement to replace the co-trustees. The order reserved all of defendants' claims related to the operation of the Trust, and against Nancy in particular. Then, on May 24, 2007, defendants filed their answer to the complaint and counterclaim, wherein they alleged Nancy breached her fiduciary duties in the administration of the Trust. In September 2007, Nancy's two children filed a complaint for declaratory judgment terminating the Trust and distributing one-third of the Trust assets to Nancy and the remaining two-thirds in equal shares to William's five children. The court terminated the Trust in a final order in November 2008 and mandated distribution of Trust assets as requested.

¶ 4. In February 2009, defendants moved to amend their counterclaim to include their half-siblings, Seth and Cornelia Alden, as counterclaim defendants and to add a count alleging that: (1) Nancy fraudulently concealed and misrepresented mate-

rial facts in the appointment of a trustee, Smith, in order to obtain Trust distributions, and (2) Nancy fraudulently transferred those distributions to trusts for her benefit and the benefit of Seth and Cornelia Alden.

¶ 5. Nancy died in September 2009. The court allowed the counterclaims brought against Nancy to continue against the Estate of Nancy Alden by its Executor Seth Alden. The counterclaims against the Estate and Seth and Cornelia Alden, collectively plaintiffs, were the subject of the motions for summary judgment. We affirm the court's decision granting the plaintiffs summary judgment.

¶ 6. Before we turn to the specifics of the claimed improprieties, we set forth the terms and conditions of the Trust. William Alden died in August of 1980. At that time, Nancy was thirty-six years old, Julia was seventeen, Todd was sixteen, Cornelia was six, and Seth was almost three years old. At the time of his death, William was domiciled in Massachusetts, and his will was probated in Berkshire County. Nancy was named executor of William's estate and was represented in this capacity by attorney Brockelman. She was also named as a trustee of the Trust.

¶ 7. The Trust was intended to provide for the "comfort, support, education and happiness" of Nancy and the five children during Nancy's lifetime, with the Trust to be split into equal shares for each of William's children after Nancy's death. It allowed the co-trustees to pay "such part or all of the income and principal as the Trustee[s] deem[] proper in [their] absolute discretion to or for the benefit of the Grantor's wife, Nancy B. Alden, during her lifetime . . . and to or for the benefit of the Grantor's children." The Trust was to be administered by three trustees: one corporate trustee, State Street Bank, and two individual trustees, Nancy and a Mr. Greaves. Any action taken by the trustees, including distributions, required the approval of two of the three trustees. Nancy was not permitted by the independent trustees to participate in any decision regarding the distribution of Trust assets to herself. Thus distributions for Nancy required the approval of the other two trustees.

¶ 8. The Trust also provided that "[c]ommencing at such time when the Trust has assets valued at $100 or more" an accounting of the administration of the Trust was to be provided to each beneficiary annually. This accounting was performed by the corporate trustee. Under the terms of the Trust, any objection to an

item on the accounting had to be made within sixty days from the mailing of the accounting, and "[i]n the absence of such objection all beneficiaries, whether or not in being or ascertained, shall be barred from objecting thereto."

¶ 9. Todd and Julia were both parties to the probate proceedings but assert that they knew nothing of their father's estate plan, or the existence of the Trust at that time. Plaintiffs asserted that defendants were aware of the Trust in 1982 when they, as eighteen- and twenty-year-old adults, signed the 1973 William C. Alden Trust Agreement as to Compensation. It is undisputed that Todd and Julia received copies of the Trust from attorney Brockelman, in early 1993, and, in November of that same year, they received their first accounting from State Street Bank.

¶ 10. One of the issues circling this case concerns a reformation action brought in Massachusetts to cure a scrivener's error in the trust document. William Alden had amended the Trust in 1973 to provide that the laws of the State of Vermont would govern the interpretation of the instrument. Because the terms of the Trust did not expressly restrict Nancy's authority to distribute Trust assets to herself, this amendment created a general power of appointment in Nancy under Vermont law which would cause the Trust assets to be included in her federal taxable estate if she died holding the power. This was contrary to the intention of William, as evidenced by the Trust itself.

¶ 11. In 1999, trustee Greaves resigned for health reasons, and for two years Nancy and State Street Bank were the only trustees. In June of 2001, attorney Newman, retained by Nancy to assist her with Trust issues, wrote to defendants informing them of the scrivener's error and the need to bring a reformation action to correct same. He also informed them that it was necessary to fill the trustee vacancy before the reformation action could be brought. The letter proposed a temporary trustee be appointed until reformation could be accomplished at which time that trustee would step down in favor of Julia Alden Dee. Then, in August of 2001, attorney Newman and an additional attorney, Quinn, wrote to defendants proposing Smith, a CPA licensed in Vermont and Massachusetts who had served as trustee of many trusts, as replacement individual trustee. Smith had not met Nancy or any of the Alden children before agreeing to serve as trustee. All the beneficiaries were asked to consent to Smith's appointment. Attorney Quinn explained that without a stipulation the probate

court could decide whether to appoint Smith with no expectation that he would resign in the future. All the beneficiaries agreed and signed the assent and stipulation except defendant Todd Alden. In September 2001, the Massachusetts Probate Court appointed Smith as successor co-trustee. There was no appeal of this decision. The appointment of Smith is the basis of defendants' claim of fraud and forms part of their claim of breach of fiduciary duty.

¶ 12. The Trust brought the reformation action to correct the scrivener's error. The Supreme Judicial Court of Massachusetts ultimately declined to reform the Trust, finding it was governed by Vermont law. To fix the tax problem created by the error, Nancy purchased a life-insurance policy which she placed in an irrevocable life-insurance trust, the proceeds of which would be used to pay any estate tax at Nancy's death resulting from the scrivener's error. In May 2000, Nancy requested an increase in her monthly distributions from the Trust in order to pay the premiums on that insurance policy. Eventually her request was approved by the other two trustees, State Street Bank and Smith. This increase in monthly distributions is one of the distributions contested by defendants.

¶ 13. The second distribution being challenged, upon which defendants also base their claim of breach of fiduciary duty, concerns Nancy's purchase of land in Williamstown, Massachusetts. In 1979, William Alden, together with two other individuals, purchased a sixty-five-acre parcel of land adjoining William and Nancy's residence. Each purchaser owned an undivided one-third interest in the property. William Alden's one-third interest was included in the inventory of his probate estate and, pursuant to his will, was distributed to the Trust. In 1982, Nancy purchased the remaining two-thirds interest in the property from the other owners. She was both executor of William's estate and a trustee at the time, but she purchased and took title to the property in her individual capacity. In March 2000, Nancy requested that the Trust distribute to her its one-third interest in the property and $300,000 for its development. She asked that the distribution be made before the reformation action was filed in Massachusetts out of concern that defendants would interfere once the Trust was before the court. By this time, the relationship between Nancy and defendants had devolved into acrimony, and she did not disclose this request to the other beneficiaries. The request to

transfer the property was approved by the State Street Bank trustee, but her request for funds to develop the property was denied. The distribution was not formally approved and the property was not transferred until December 2001, after Smith was appointed to the third trustee position. As noted above, no distribution could be approved for Nancy without approval of the two other trustees.

¶ 14. Thus, there are two distributions of Trust assets at issue in this case. First, the 2001 transaction in which the two independent trustees approved the distribution of the one-third interest in the Williamstown property to Nancy. Second, the two independent trustees' approval of the use of trust funds to pay the premiums of a life insurance policy to cover the federal tax burden that would otherwise have been imposed on Nancy's estate as a result of the scrivener's error had she died when the Trust was in existence.

¶ 15. In assessing the case before it, the trial court found that each party's motion for summary judgment turned on the resolution of four specific issues: (1) whether Nancy breached her fiduciary duties by purchasing the two-thirds interest in the Williamstown property for herself; (2) whether Nancy breached her fiduciary duties by requesting and accepting certain distributions for the Trust; (3) whether Nancy breached her fiduciary duties by pursuing a reformation action in Massachusetts; and (4) whether Nancy committed fraud in relation to the appointment of trustee Smith.

¶ 16. Summary judgment is appropriate when the moving party demonstrates that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Where both parties move for summary judgment, each party is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged. *Bixler v. Bullard*, 172 Vt. 53, 57, 769 A.2d 690, 694 (2001). The court must rule on each party's motion independently under the Rule 56 standard, and both motions should be denied if there is a genuine issue of material fact. 10A C. Wright et al., Federal Practice & Procedure: Civil 3d § 2720, at 335-36 (1998). On appeal, we apply the same standard as the trial court in ruling on such a motion; therefore, we must determine whether genuine issues of material fact exist and, if not, whether any party is entitled to judgment as a matter of law. *Travelers Ins. Cos. v. Demarle, Inc.*,

*USA*, 2005 VT 53, ¶ 3, 178 Vt. 570, 878 A.2d 267 (mem.). If we conclude that there are "genuine issues of material fact, within the meaning of V.R.C.P. 56(c), we must reverse the decision granting summary judgment." *Id.* (quotation omitted). While it is not the role of a court to weigh evidence and decide issues of disputed facts, a court must determine whether the evidence is sufficient to create a genuine issue of material fact. And, the facts alleged must be sufficient for a reasonable jury to find in favor of the nonmoving party. See *id.* ¶ 10.

 ¶ 17. We begin with the basics. A trustee is a fiduciary who owes duties of loyalty, disclosure, impartiality, and prudence to the beneficiaries, 14A V.S.A. §§ 802-804, 813, the breach of which is actionable. *Id.* § 1001. "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." *Id.* § 1001(a). A trustee must act with "utmost probity in all matters concerning the [fiduciary] relationship." *O'Connor v. Redstone*, 896 N.E.2d 595, 607 (Mass. 2008) (quotation omitted); see *J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶¶ 11, 19, 188 Vt. 245, 6 A.3d 701 (noting fiduciary's calculated plan to sabotage beneficiary and personally benefit violates duty of "utmost good faith and loyalty"). Disclosure by a trustee is fundamental to sound trust administration and the beneficiaries' ability to monitor the trustees' performance of their duties. Restatement (Third) of Trusts § 82 cmt. d (2007).

¶ 18. The court below resolved defendants' claims of breach of fiduciary duty in favor of Nancy's estate finding the claims were time-barred. The parties and the court had agreed that the general six-year statute of limitations for civil actions applied to the fraud claim. See 12 V.S.A. § 511; *Lodge at Bolton Valley Condo. Ass'n v. Hamilton*, 2006 VT 41, ¶ 10, 180 Vt. 497, 905 A.2d 611 (mem.) (applying general six-year limitations period to fraud claim). And, after discussing the possible effect of the enactment of the Vermont Trust Code (VTC) on the applicable statute of limitations for the breach of fiduciary duty claim, the court held that both sides would be prejudiced by application of the VTC limitation period and applied the general six-year statute of limitations in effect when the violation of fiduciary duty claims accrued. Further, the court held that the sixty-day limitations

period created under the terms of the Trust governed any claims based on an objection to Trust distributions.[1]

## I. The Breach

¶ 19. In count one of their counterclaim, defendants alleged that Nancy breached her fiduciary duties of loyalty and impartiality by personally acquiring a two-thirds interest in the Williamstown property while she was a trustee of the Trust which owned the other one-third interest. Nancy acquired the property in February 1982 for $56,000. More than ten years later, on September 13, 1993, Nancy sent a letter to all five Alden children explaining that she owned a two-thirds interest in the property and wanted to obtain the remaining one-third interest from the Trust. She proposed to transfer property she owned in Brookline, Vermont, in exchange for the distribution of the one-third interest in the Williamstown property. The proposed property exchange was rejected by defendants and, the court found, "resulted in a great deal of resentment and distrust of Nancy by the [d]efendants." Defendants argue that Nancy's purchase created a reasonably foreseeable risk of conflict between her fiduciary duties and personal interests. They rely on the established premise that a trustee has a duty to "administer the trust solely in the interests of the beneficiaries." 14A V.S.A. § 802(a) (delineating trustee's duty of loyalty).

¶ 20. The court held this claim was barred by the applicable statute of limitations, and we agree. Defendants filed their counterclaim on May 24, 2007. Because they were on notice as of September 13, 1993, that Nancy had purchased the two-thirds interest in the property, under the applicable six-year limitation period, their claim of breach of fiduciary duty was time-barred

---

[1] Before enactment of the VTC, breach of fiduciary duty claims had to be brought within six years of the date the injury and its cause were, or should have been, discovered. 12 V.S.A. § 511; *Lodge at Bolton Valley Condo. Ass'n*, 2006 VT 41, ¶¶ 3, 10. But, effective in 2009, § 1005 of the VTC created a limitations period specific to actions against trustees for breach of trust. 14A V.S.A. § 1005. Pursuant to this section, "[a] beneficiary may not commence a proceeding against a trustee for breach of trust more than one year after the date the beneficiary . . . was sent a report that adequately disclosed the existence of a potential claim for breach of trust." *Id.* § 1005(a). As the trial court noted, though the VTC became effective after defendants filed their counterclaim, the VTC applied retroactively to the litigation unless such application would prejudice the rights of the parties. See 14A V.S.A. § 1204(a)(4).

and summary judgment was appropriately granted to the Estate on this claim. A cause of action accrues when the plaintiff discovers, or should have discovered, both the injury and its cause. *Pike v. Chuck's Willoughby Pub, Inc.*, 2006 VT 54, ¶ 14, 180 Vt. 25, 904 A.2d 1133; *Univ. of Vermont v. W.R. Grace & Co.*, 152 Vt. 287, 289-90, 565 A.2d 1354, 1356 (1989). Specifically, the claim accrues:

> upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry.

*Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 7, 186 Vt. 605, 987 A.2d 258 (mem.) (quotation omitted); see also *Turner v. Roman Catholic Diocese of Burlington, Vermont*, 2009 VT 101, ¶ 50, 186 Vt. 396, 987 A.2d 960 (applying "discovery rule" standard).

¶ 21. The facts concerning Nancy's ownership of the property were easily discernable matters of record. However, defendants claim they did not know of Nancy's transgressions until 2007 when they received a copy of former trustee Greaves' file. In the alternative, they argue that if the limitations period began when the trustees eventually approved the distributions and issued a trust accounting in September 2001, their counterclaim was timely filed. There is no merit to either of these positions.

¶ 22. It is undisputed that in 1993 Nancy disclosed to defendants that she owned the two-thirds interest in the Williamstown property when she offered to trade land she owned in Brookline for the one-third interest in the property held by the Trust. At the time they rejected Nancy's proposition in 1993, defendants knew that she had been both a trustee and a beneficiary since the Trust's creation. Defendants were sufficiently informed of the circumstances surrounding ownership of the Williamstown property to enable them to assess Nancy's actions and seek redress if they believed she had breached her fiduciary duties as trustee. In other words, there existed facts sufficient to

412

put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of a cause of action. As the court below found, as a matter of law, no reasonable fact finder could differ as to that conclusion. See *Kauffman v. State Farm Mut. Auto. Ins. Co.*, 857 F. Supp. 23, 25 (D. Vt. 1994).

¶ 23. Defendants' claim that Nancy's fraudulent concealment of material facts tolled the limitations period on the conflict of interest/self-dealing claim is equally unavailing. See 12 V.S.A. § 555. Section 555 provides: "When a person entitled to bring a personal action is prevented from so doing by the fraudulent concealment of the cause of such action by the person against whom it lies, the period prior to the discovery of such cause of action shall be excluded in determining the time limited for the commencement thereof." There was no concealment of Nancy's ownership, or her status as beneficiary and trustee, or of her desire for ownership of the remainder of the property. Those are the material facts to be known.[2]

¶ 24. Defendants quarrel with the court's expectation that they would do due diligence because of their suspicions of Nancy's motives regarding the property exchange. They argue that a beneficiary has a right to rely on a trustee's performance of duties and suggest their reliance on Nancy's claimed misrepresentations was reasonable. The suggestion that defendants justifiably relied on Nancy's performance as a trustee to look after their interests makes no sense as they admit they distrusted her, at least as early as 1993 when she first proposed the property exchange. The court rejected this "assertion of an innocent state of ignorance as lacking any objective credibility." We agree. The applicable six-year statute of limitations barred defendants' claims of breach of

---

[2] The trial court went on to analyze Nancy's personal acquisition of the property and found that she violated no fiduciary duty by her actions. In analyzing the acquisition of the property, the court looked at 14A V.S.A. § 802(e). In transactions involving property that is not a part of a trust, the trustee breaches the duty of loyalty if she takes, in her individual capacity, "an opportunity properly belonging to the trust." *Id.* § 802(e). The court found no evidence that the acquisition of the two-thirds interest was a Trust opportunity because the Trust lacked the financial ability to purchase the property. See *Riley v. Rockwell*, 747 P.2d 903, 905 (Nev. 1987) (noting that generally, transactions where trustee becomes co-owner with trust should be discouraged, because of increased chance of self dealing "'unless the trust clearly lacks the funds to make the purchase.'" (quoting 9 G. Bogert, Trusts and Trustees § 543(d) (rev. 2d ed. 1978))). As the statute of limitations decision settles this question, we do not review this issue.

fiduciary duty based on Nancy's acquisition of the two-thirds interest in the Williamstown property.

## II. The Distributions

¶ 25. With regard to the two challenged trust distributions — the one-third interest in the Williamstown property and an increase in Nancy's monthly distributions to cover the increase in premiums for the life insurance policy that was intended to pay any taxes imposed on her estate as a result of the scrivener's error — the trial court held the challenges were time-barred, applying the sixty-day time limitation imposed by the language of the Trust.

¶ 26. One critical duty of a trustee is to keep beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. See Restatement (Third) of Trusts § 82(1)(c) (2007). Under the VTC, trustees must provide beneficiaries, at least annually, "a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation." 14A V.S.A. § 813(c).[3] As noted, the Trust instrument required an annual accounting and provided that any objection to items on the accounting be made within sixty days of the mailing of the account. Further, it provided that "[i]n the absence of such objection all beneficiaries, whether or not in being or ascertained, shall be barred from objecting thereto." The VTC provides that a potential claim for breach of trust is adequately disclosed if there is "sufficient information so that the beneficiary or representative knows or has reason to know of the potential claim or that the beneficiary had a duty to inquire further and the response to such an inquiry would have disclosed the potential claim." 14A V.S.A. § 1005(b).

¶ 27. Despite receiving the 2001 annual trust accounting that included the transfer of the property to Nancy and the 2002 annual trust accounting that reported the increased monthly payment to Nancy, defendants made no objection to either within sixty days. There is no dispute that defendants did not object to

---

[3] While the trial court determined not to apply the statute of limitations found in the VTC to the claim of breach of fiduciary duty, the VTC does apply to construction of the instrument. See 14A V.S.A. § 1204.

these distributions until they filed their counterclaim in May 2007. The court properly applied the specific limitation imposed by the Trust. As the trial court noted:

> Nancy's failure to make the disclosures about which Defendants complain did not deprive Defendants of their opportunity to challenge the distributions as soon as they were reported on the accounting. The accounting provided Defendants with all the disclosure which the Trust required, and all that was reasonably necessary for the protection of their interests. If Defendants had inquired about the distributions, the trustees' duty to inform would have required them to provide that information.

¶ 28. Before the trial court, defendants relied solely on 12 V.S.A. § 465 to claim the sixty-day provision was "null and void." Section 465 provides: "Except as otherwise provided by statute, any provision in a contract which limits the time in which an action may be brought under the contract or which waives the statute of limitations shall be null and void." Defendants argue that the Trust is a contract and thus the sixty-day shortening of time to bring a claim against a trustee or distribution is void. They cite no authority for the proposition that a settlor cannot place limits on the ability of beneficiaries to challenge the action of trustees.

¶ 29. Regardless, their reliance on § 465 is misplaced. "The creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract." Restatement (Second) of Trusts § 197 cmt. b (1959). A trust is fundamentally different from a contract. See *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 681 (S.D.N.Y. 1997) ("[I]t is a long-standing rule that trust beneficiaries . . . may not bring an action for breach of contract against a trustee based on the trustee's alleged failure to perform its duties pursuant to a trust deed."). This is not an action under a contract. Section 465 is not applicable here. The challenges to the distributions fail.

### III. The Fraud

¶ 30. Defendants also claimed that Nancy violated her fiduciary duty and committed a fraud upon the other beneficiaries of the Trust through concealment or misrepresentation of facts concerning the appointment of a trustee to succeed Greaves. They claim Nancy failed to disclose that she had distribution requests

pending at the time of this appointment with the intent that defendants would rely on her statements and approve Smith as trustee, and that they did in fact rely on these misrepresentations and were thus damaged by the resulting distributions to Nancy. This common law fraud claim is subject to the general six-year statute of limitations for civil actions. 12 V.S.A. § 511; see *Lodge at Bolton Valley Condo. Ass'n*, 2006 VT 41, ¶ 10. The undisputed facts revealed that defendants were concerned about Smith's independence in 2003. As the fraud claim was added to their amended complaint in December 2008, it was timely.

¶ 31. As noted, Greaves resigned in 1999 and no successor was named for two years. In June of 2001, Nancy asked defendants to consent to the appointment of a successor trustee, Smith. Defendants claim Nancy acted fraudulently in Smith's appointment because she did not disclose to defendants that, after Greaves resigned, she had asked the Trust to make principal distributions to her — for development costs in connection with the Williamstown property — which the Trust terms required a quorum to approve; or that the lawyers who were soliciting defendants' consent were also retained to work on Nancy's behalf. They also suggest that Nancy was displeased with the corporate trustee, State Street Bank, and was plotting to replace the bank as the corporate trustee. In support of their claim that Smith was not an "independent" co-trustee, defendants suggest that he was a long-time business colleague of one of Nancy's lawyers, attorney Quinn and — with no evidence to support this — claim Smith had agreed prior to his appointment to vote with Nancy. To summarize, defendants claim they were misled.

¶ 32. The essential elements of a fraud claim are (1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party acts in reliance on that fact; and (5) is thereby harmed. *Lewis v. Cohen*, 157 Vt. 564, 568, 603 A.2d 352, 354 (1991). Fraudulent misrepresentation can be accomplished affirmatively by false statement or by the concealment of facts by one who has a duty to disclose those facts. *Sutfin v. Southworth*, 149 Vt. 67, 69-70, 539 A.2d 986, 988 (1987). The duty to disclose arises out of a special relationship of confidence or trust — such as the fiduciary relationship between trustee and beneficiary. See *id.* at 70, 539 A.2d at 988. The party alleging fraud has the burden of proving each of the

elements by clear and convincing evidence. *Lewis,* 157 Vt. at 571, 603 A.2d at 355. The absence of any one element prevents the party from prevailing on a fraud claim. *Id.* at 568, 603 A.2d at 354.

¶ 33. The court found that defendants' fraud claim fell short on two elements: fraudulent misrepresentation and harm. With respect to harm, the trial court correctly concluded that defendants cannot meet their burden on this element because they are not entitled to receive anything from the Trust. The trustees were granted absolute discretion to distribute the entire balance of the Trust to any beneficiary to the exclusion of all others. Even defendants' articulated claim of harm is purely speculative, suggesting "disclosure probably would have led the Berkshire Probate Court to proceed cautiously" in appointing Smith.

¶ 34. Regarding the fraudulent misrepresentation claim, the court held that defendants did not produce evidence from which, in the absence of rank speculation, a jury might conclude that Smith was not independent. Against the unsupported suspicions, the court had before it the affidavit of Smith attesting to his independence, averring that he was neither aware of Nancy's pending requests when he agreed to serve as trustee nor did he agree to approve any distribution prior to his appointment. The court found defendants could not establish a lack of independence on the part of Smith.

¶ 35. We agree. The representations of attorneys Newman and Quinn would be attributable to Nancy as they were acting within the scope of their agency, and she is presumed to ratify those acts by accepting any benefits derived from them. See *Agency of Natural Res. v. Towns,* 168 Vt. 449, 453, 724 A.2d 1022, 1024 (1998) (attribution); *Estate of Sawyer v. Crowell,* 151 Vt. 287, 293, 559 A.2d 687, 691 (1989) (ratification). However, despite evidence that Nancy's attorneys were working on Nancy's behalf to structure the composition of the trustees so as to support her efforts to reform the Trust to correct the scrivener's error or for funds to ameliorate the financial fall-out from the scrivener's error, and to acquire the one-third interest in the Willamstown property, the court below correctly identified these efforts by Nancy's attorneys as strategic ideas to correct the estate tax problem to benefit the Trust beneficiaries and to provide distributions for Nancy's necessary support. More importantly, the court noted that it was attorney Quinn who disclosed to defend-

ants that Smith was a longtime colleague, who offered to provide information regarding Smith's credentials, and who encouraged defendants to consult with their own attorneys on the issue. Further, the trial court found that neither trustee's subsequent approval of the land and life-insurance distributions supported any inference of collusion. We agree. In the absence of any evidence that Smith was not independent, there can be no misrepresentation of that fact. See *Poplaski v. Lamphere*, 152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989) (noting summary judgment mandated where, "after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element' essential to his case and on which he has the burden of proof at trial." (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)))).

 ¶ 36. The actions of the trustees were plainly within the broad discretion allowed by the Trust and were supported by plausible justifications. Further, it is not reasonable to claim that defendants relied on any alleged misrepresentation. Defendant Todd's refusal to assent to Smith's appointment indicates he did not accept what he had been told regarding Smith. And, because of the mistrust defendants felt toward Nancy, defendants could have investigated the propriety of appointing Smith, which they apparently did not do. See *Lewis*, 157 Vt. at 569, 603 A.2d at 354 (observing duty to investigate misrepresentation arises where "it is clear from the . . . facts about the relationship of the parties that reliance should only follow an independent inquiry." (quotation omitted)).

 ¶ 37. Similarly, in order to establish that Nancy fraudulently concealed her pending requests for distribution, defendants had to demonstrate that Nancy had a duty to disclose those requests. A trustee's duty to disclose requires her to inform the beneficiaries of information about trust assets necessary to protect the beneficiaries' interest. It does not require the trustee to inform the beneficiaries of every aspect of administration of the trust or every request for distribution made to the trustees. See 14A V.S.A. § 813. The court found that Nancy did not have a duty as trustee to inform the other beneficiaries she had a pending request for distribution of the one-third interest in the Williamstown property — the only request for distribution pending prior to Smith's appointment — and that disclosure of any pending distribution request was not material to the issue of

Smith's appointment. It noted "[d]istributions made under this Trust are entirely discretionary — there is no guarantee of distribution to any beneficiary. . . . [Trustees] are not expressly required to advise the other beneficiaries of requests for distribution." It further found that defendants failed to provide any evidence to support their claim that getting the distributions approved was Nancy's motive for appointing a trustee. It also found no evidence to support a pre-arranged collusion to increase monthly distributions to cover the life insurance policy made necessary by the scrivener's error.

¶ 38. Finally, defendants argue that there were disputed issues of material fact that should have precluded summary judgment below. Defendants' argument on this issue is simply that the court below should have adopted the inferences they wanted the court to find from the evidence they did present. The court found that defendants had failed to produce credible evidence of Smith's lack of independence or of any plan to replace State Street as a trustee. A lack of sufficient evidence on one side does not mean a disputed issue of fact remains. See 10A Wright et al., *supra*, § 2720, at 335. Again, defendants' claims must fail.

*Affirmed.*