NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 62

No. 2020-290

| | |
|---|---|
| Katherine Higgins | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Shawn Bailey and Suzan Bailey | April Term, 2021 |

Robert R. Bent, J.

Steven A. Adler of Adler & McCabe, PLC, St. Johnsbury, for Plaintiff-Appellant.

John E. Brady of Brady/Donahue, Springfield, for Defendant-Appellees.

PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.     **ROBINSON, J.**   The primary issue in this case is whether a landlord who has no knowledge that a tenant's dog has dangerous propensities can be held liable for injuries the dog causes to individuals who enter the property with tenant's permission.  Plaintiff Katherine Higgins, who was badly injured by a tenant's dog while on the leased property, challenges the trial court's grant of summary judgment to defendant landlords.  We affirm.

¶ 2.     The undisputed material facts for purposes of landlord's summary judgment motion are as follows.  Defendants Suzan and Shawn Bailey (landlords) rented their house in Marshfield, Vermont, to Skyler Bagalio (tenant).  At the time, defendants were living in Arkansas, and had listed their Marshfield house for sale with a Vermont realtor.  Their prior tenant had located Bagalio by listing the property for rent online. Landlords expressly gave permission to tenant to move into the house with his dog, and the written lease agreement between landlords and tenant

allowed tenant to move into the property with a dog. At no time before the dog attack that gave rise to this lawsuit did landlords have actual knowledge that the dog had previously bitten a person. Their prior tenant who arranged for the rental to tenant likewise had no detailed knowledge regarding the dog, including its size, disposition, or aggressiveness, and had no knowledge that it had ever been aggressive with or harmed someone. Landlords did not ask tenant any questions about his dog. When he was showing the house on landlords' behalf after tenant moved in, the realtor who was representing landlords in marketing the property observed obvious signs around the house that a dog lived there, including door casings that were badly scratched by the dog. The realtor did not see the dog and did not know its size or breed or whether it had ever acted aggressively towards any person or other animal; based on the sound of the dog, he opined that it was "tough and loud." Plaintiff, a neighbor, was attacked and seriously injured by tenant's dog, an American Pitbull Terrier, while visiting tenant on the rental property. Before tenant rented the house from landlords, the dog had bitten a child in the face causing serious injuries. This was in part the reason tenant moved out of his prior residence.

¶ 3. Based on these events, plaintiff sued landlords for negligence.* After discovery, landlords moved for summary judgment, arguing that there was no evidence that landlords knew or should have known of the dog's dangerous propensities and thus they had no legal duty to plaintiff. The trial court agreed, rejecting plaintiff's legal argument that landlords had an affirmative duty to inquire or investigate the dog's history before permitting tenants to have the dog on the premises. The trial court relied heavily on our decision in Gross v. Turner, in which we held that a landlord with no knowledge that the tenant's dogs had dangerous propensities had no legal duty to members of the public injured by tenant's dog outside of the leased property. 2018 VT 80, ¶ 12, 208 Vt. 112, 195 A.3d 654.

---

* Plaintiff also sued tenant. The court subsequently dismissed that claim at plaintiff's request prior to its summary judgment ruling against landlords.

2

¶ 4.     On appeal, plaintiff renews her argument that landlords have a general duty of care to the public, and that this duty includes a duty of reasonable inquiry concerning tenants' domestic animals.  In addition, she argues that landlords were on notice of the dog's dangerous propensities on the basis of the observations made by realtor, acting as landlords' agent.  Finally, she contends that landlords are liable to plaintiff on the basis of a municipal ordinance.

¶ 5.     This Court applies the same standard as the trial court when reviewing a summary judgment decision and will affirm the trial court's summary judgment "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law."  In re Carter, 2004 VT 21, ¶ 6, 176 Vt. 322, 848 A.2d 281; see also V.R.C.P. 56.  It is not the court's role to weigh evidence or decide issues of disputed facts, but "a court must determine whether the evidence is sufficient to create a genuine issue of material fact."  Estate of Alden v. Dee, 2011 VT 64, ¶ 16, 190 Vt. 401, 35 A.3d 950.  "[T]he facts alleged must be sufficient for a reasonable jury to find in favor of the nonmoving party."  Id.

¶ 6.     We consider each of plaintiff's arguments in turn.

## I.  Landlords' Common-Law Duty to Plaintiff

¶ 7.     In arguing that landlords had a legal duty of care to plaintiff, plaintiff argues that whether landlords had a duty to plaintiff in this case is a factual question, rather than a legal one.  She points to our decision in LeClair v. LeClair in support of her argument.  2017 VT 34, 204 Vt. 422, 169 A.3d 743.  She contends that a jury could conclude that landlords in this case did not act as reasonable landlords in allowing tenant to move in with his dog without any inquiry or investigation concerning the dog's history and disposition, and she argues that our decision in Gross does not provide otherwise.

¶ 8.     As set forth more fully below, we conclude that the question whether landlords had a legal duty to plaintiff, as contrasted to the question whether they breached the applicable standard

3

of care, is a question of law. Our analysis in LeClair does not suggest otherwise. With respect to the legal question whether landlords had a duty to plaintiff, Gross is not directly controlling. The asserted duty in Gross ran from a property owner to the general public in connection with injuries to individuals off of the property arising from a dangerous condition or use of the premises; in this case, the asserted duty runs from a landlord to a tenant's guest. We need not decide whether there are ever circumstances in which a landlord can be liable to a tenant's guest who is injured by a tenant's dog on the tenant's premises because we conclude that, at a minimum, the landlord cannot be liable if the landlord has no notice of the animal's dangerous propensities.

¶ 9.     We have consistently held that the existence of a <u>duty</u> is primarily a question of law for the court to decide. See, e.g., <u>LeClair</u>, 2017 VT 34, ¶ 10 ("[W]hether a duty is owed is primarily a legal question in which the Legislature or courts apply general categorical rules establishing or withholding liability." (quotation omitted)); <u>O'Connell v. Killington, Ltd.</u>, 164 Vt. 73, 76, 665 A.2d 39, 42 (1995) ("[Duty's] existence is primarily a question of law."); <u>Langle v. Kurkul</u>, 146 Vt. 513, 519, 510 A.2d 1301, 1305 (1986) ("Whether there is a legal duty is primarily a question of law. . . ."). The <u>standard</u> of care, on the other hand, is the conduct a reasonable person would undertake, or refrain from undertaking, if a duty exists. See Restatement (Second) of Torts § 283 cmt. a (1965) (distinguishing standard of conduct required to avoid being negligent from question of whether duty exists). Whether a defendant has breached a duty by failing to adhere to the standard of care is generally a factual question. Plaintiff's argument that a reasonable landlord would not have rented to tenant in this case without first asking more about his dog addresses the standard of care of a reasonable landlord; it does not resolve the question whether landlords had a legal duty to plaintiff enforceable through a negligence claim.

¶ 10.     Our analysis in <u>LeClair</u> does not suggest otherwise. In <u>LeClair</u>, a roofer sued the property owner after falling off a dew and frost-covered roof while replacing shingles. Relying on Restatement (Second) of Torts § 343, the trial court concluded that a possessor of land is liable for

4

physical harm to invitees caused by the condition of the land only if the possessor should expect that the invitee will not discover or realize the danger. Because the danger in <u>LeClair</u> was open and obvious, the property owner had no duty. On appeal, this Court reaffirmed that "whether or not one party owes a duty to another" is primarily a legal question governed by categorical rules establishing or withholding liability. <u>LeClair</u>, 2017 VT 34, ¶ 10. Relying on the same Restatement provision, and its companion, § 343A, we explained that a possessor of land is not liable to invitees for physical harm caused by a condition on the land whose danger is known or obvious to them, "<u>unless</u> the possessor should anticipate the harm despite such knowledge or obviousness." <u>Id</u>. ¶ 12 (quotation omitted). Because the property owner was in a position of authority over the plaintiff (he was plaintiff's grandfather and indirect employer), and because he ordered the plaintiff to go onto the frosted roof despite the obvious danger involved, we concluded that a reasonable jury could conclude that the property owner should have anticipated the harm despite the obviousness of the danger. <u>Id</u>. ¶ 13. Although the existence of a legal duty in that case relied in part on a factual determination to be made by the jury, we did not depart from the general principle that the question of duty is primarily a legal issue, resolved by categorical rules, and we did not conflate the existence of a legal duty with the reasonableness of the defendant's conduct.

¶ 11. With respect to the question whether landlords had a legal duty to plaintiff in this case, we note that <u>Gross</u>, while instructive, is not controlling because it is grounded in a different thread of the common law. In <u>Gross</u>, social guests of the tenants accidentally let the tenant's dogs out of the house and one of the dogs injured a pedestrian outside the landlord's property. In assessing the extent of the landlord's duty to the plaintiff, we relied on Restatement (Second) of Torts § 379A, which provides:

> A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,
>
> (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and

(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.

We explained that under Vermont law, "ordinary domestic dogs are not considered to be an unreasonable risk to the public," and we accordingly rejected the broad argument that by simply permitting a tenant to keep a domestic dog on unfenced premises a landlord assumes a duty to protect all people outside the property from physical harm by the dog. Gross, 2018 VT 80, ¶ 12. However, we held that a landlord has a duty "to take reasonable steps to protect persons outside the land from injuries caused by a tenant's dog if the landlord knew or had reason to know at the time of entering the lease that the dog in question posed an unreasonable risk of harm to such persons." Id. ¶ 13. Because there was no evidence that the landlord knew or had reason to know that the tenant's dog posed an unreasonable risk to people outside the land, we concluded the landlord had no duty to the plaintiffs. Id. ¶ 15. We expressly rejected the suggestions that, for purposes of the duty reflected in § 379A, a dog's breed alone is sufficient to put a landlord on notice that it poses an unreasonable risk of harm, and that landlords have an affirmative duty to conduct background checks on tenants' domestic animals. Id. ¶¶ 17-18.

¶ 12. Our decision in Gross was grounded in a strand of common law focused on dangerous activities on land causing injuries to others outside the land. Id. ¶ 13. The theory underlying § 379A is that, just as a landowner who personally carries on unreasonably dangerous activities on the land may be liable to members of the public outside the land injured as a result of those activities, a landlord who permits a tenant to keep a dog that the landlord knows to be vicious could be viewed as having created the risk that led to the third person's injuries. Id. Compare § 379A (describing tort liability of lessor of land to third parties outside the land) with § 371 (describing tort liability of possessor of land to third parties outside the land). This legal duty lies at the intersection of tort and property law, and is recognized in the Restatement (Second) of Property as well:

A landlord is subject to liability for physical harm to persons outside the leased property caused by activities of the tenant or others on the leased property after the landlord transfers possession only if:

(1) the landlord at the time of the lease consented to the activity or knew that it would be carried on; and

(2) the landlord knew or had reason to know that it would unavoidably involve an unreasonable risk, or that special precautions necessary to safety would not be taken.

Restatement (Second) of Prop.: Landlord and Tenant § 18.4 (1977). Critical to application of this strand of the common law is that the party injured as a result of unreasonably dangerous activities on the leased property was located outside the leased premises. Accordingly, though Gross provides insights that inform our analysis of the issue presented in this case, it is not controlling authority.

¶ 13.     Instead, this case requires us to evaluate a landlord's duty to a tenant's guests on the leased property. At common law, with several enumerated exceptions inapplicable here, a lessor of land was not subject to liability to the lessee or the lessee's invitees for physical harm caused by any dangerous condition, whether natural or artificial, and whether it existed when the lessee took possession or came into existence thereafter. See Restatement (Second) of Torts §§ 355-356. Accordingly, some courts have held that a landlord owes no duty of care to tenants or their guests with respect to dangers posed by tenants' dogs. For example, in Stewart ex rel. Stewart v. Aldrich, the Maine Supreme Court held that "[a] landlord is generally not liable for a dangerous condition that comes into being after the lessee takes exclusive possession and control of the premises," and explained that the power to coerce the conduct of tenants through the threat of eviction or refusing to renew a tenancy is not the kind of "control" exercised by a landlord sufficient to give rise to a legal duty. 2002 ME 16, ¶¶ 10, 12-13, 788 A.2d 603. The court based its holding on the principle that "a lease or tenancy is equivalent to a conveyance for almost all purposes, and when a tenant assumes exclusive control and possession of the premises, the tenant

7

becomes like the owner of the property for most purposes." Id. ¶ 14; see also Clea v. Odum, 714 S.E.2d 542, 546 (S.C. 2011) ("Under the common law of our state, a landlord is not liable to a tenant's invitee for injuries inflicted by an animal kept by a tenant on leased property."). Relatedly, at least one court has held that the keeping of a vicious dog is an activity taking place on the property rather than a physical condition of the leased premises, and a landlord accordingly owes no duty to third parties entering the property to protect them from injury caused by a tenant's dog. Boots ex rel. Boots v. Winters, 179 P.3d 352, 356 (Idaho Ct. App. 2008).

¶ 14.    On the other hand, some courts have concluded that in certain circumstances a landlord may be liable for injuries to a tenant's guests caused by the tenant's domestic animal. For example, a New York appellate court concluded that where a landlord has "prior actual knowledge that a prospective tenant intend[s] to harbor a dog with vicious propensities at the inception of the leasehold," the landlord may be liable for injuries the animal causes to third persons lawfully on the leased premises. Strunk v. Zoltanski, 466 N.Y.S.2d 716, 717 (App. Div. 1983), aff'd, 468 N.E.2d 13 (N.Y. 1984). The rationale is that the general rule of non-liability is based on the fact that a landlord relinquishes control over the leased premises. Id. Where the landlord has actual knowledge that a prospective tenant has a dangerous animal before the landlord relinquishes control over the premises, the policy underlying the general rule of nonliability does not apply because the landlord can "obviate a reasonably foreseeable risk of injury to the third persons lawfully upon the leased premises by the simple expedient of refusing to lease to the prospective tenant or by imposing a condition on the lease prohibiting the harboring of said animal on the demised premises." Id.

¶ 15.    Similarly, the Maryland Court of Appeals considered a claim against the landlord of an apartment complex for fatal injuries inflicted on a child guest of a tenant by the tenant's dog. Matthews v. Amberwood Assocs. Ltd. P'ship, 719 A.2d 119 (Md. 1998). The court acknowledged the general rule that in a multi-unit facility, the landlord has a duty to tenants, guests, and others

on the land in the right of the tenant, to maintain common areas in a reasonably safe condition, but this duty does not extend to guests within the tenant's apartment. Id. at 123-24. The court explained that the principal rationale for the general rule is that once a tenant takes possession, the landlord "has parted with control" and is no longer in a position to exercise a degree of control to take steps to prevent injuries arising from the dangerous condition. Id. at 125 (quotation omitted). The landlord may thus retain a duty of care to third parties with respect to matters over which the landlord does retain control, including within a tenant's unit. Id. Because the lease in the Matthews case prohibited the keeping of pets and provided that a breach of the "no pets" clause would be a default of the lease, the court concluded that the landlord did retain a degree of control over the tenant's keeping of a dog on the premises. Id. at 125-26. The landlord in that case knew about the dangerous dog for a considerable period of time prior to the fatal attack, and by virtue of the "no pets" clause in the lease, had sufficient control to take steps to address the risk. Id. at 126-27. Under these circumstances, the court concluded the landlord owed a duty of care to third party guests of the tenant relative to the dog. Id. at 127.

¶ 16. These decisions are consistent with the modern evolution in the common law governing a landlord's duties to a tenant's guests. As noted in the Restatement (Second) of Property, the principle of non-liability embodied in §§ 355 and 356 of the Restatement (Second) of Torts has been "substantially eroded by the exceptions which are growing in number and scope." Restatement (Second) of Prop.: Landlord and Tenant, ch. 17, intro. note. The contrast between the Second and Third Restatement of Torts highlights this evolution. The Second Restatement establishes the general rule that landlords do not have a common law duty of care to a tenant's guests and then enumerates various exceptions. See Restatement (Second) of Torts §§ 355-362. By contrast, the Third Restatement replaces the general rule of nonliability with a list of circumstances in which a landlord does have a legal common-law duty to a tenant or tenant's guests. See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 53 (2012).

That list includes a duty of reasonable care relating to "any dangerous condition on the leased premises at the time the lessee takes possession" if "the lease is for a purpose that includes admission of the public" and "the lessor has reason to believe that the lessee will admit persons onto the leased premises without rectifying the dangerous condition." Id. § 53(d).

¶ 17. We need not decide in this case whether the presence of a dangerous domestic animal constitutes a defect or danger in the condition of the premises for which a landlord may be liable to a tenant's guests, or whether a landlord can ever be liable to a tenant's guests for injuries caused by a tenant's dog. Two factors are critical to the courts' analyses in those cases in which courts have held that a landlord can be liable to a tenant's guests: (1) the landlord has had actual knowledge of the tenant's dangerous animal, and, (2) the landlord has had the legal ability to mitigate the risk, either because the landlord had knowledge prior to the inception of the tenancy or because, through the lease, the landlord retained control of the tenant's use of the property to keep domestic animals. Thus, even the cases that espouse a broader view of a landlord's common law duty of care to guests of a tenant within non-common spaces do not suggest that a landlord without actual knowledge has an affirmative common-law duty to investigate whether a tenant intends to keep a companion animal and the details of that animal's history and disposition before renting to a tenant. In this case, even viewing the summary judgment record in the light most favorable to plaintiff, there is no evidence that landlords had actual knowledge that tenant's dog had a history of aggressive or dangerous behavior. Moreover, as we concluded in Gross, even if landlords knew the breed of tenant's dog, that fact alone would not have been sufficient to give rise to a legal duty of care. See 2018 VT 80, ¶ 17.

## II. Realtor's Observations

¶ 18. Plaintiff argues that even if landlords can be liable only if they had actual knowledge that tenant was keeping an aggressive dog, landlords had such knowledge by virtue of their realtor's observations. She contends that realtor was acting as landlords' agent at all times

relevant to this case, and that under agency law, an agent's knowledge is imputed to the principal, in this case, landlords. Because realtor knew of the dangerous dog, plaintiff reasons, landlords were on constructive notice.

¶ 19. We decline to address plaintiff's legal theory as to the significance of realtor's observations because we reject her argument on the evidence. Even viewing the summary judgment record in the light most favorable to plaintiff, we cannot agree that realtor had knowledge of the animal's dangerous propensities. Realtor did not see the dog or interact directly with the dog. There is no evidence that realtor had knowledge of the dog's history. At most, the record reflects that realtor noticed that the dog had destructively scratched door frames in the house, and that the dog sounded "tough and loud." These data points are insufficient to put realtor on notice that tenant's dog posed an unreasonable danger to other people.

### III. The Town Ordinance

¶ 20. Plaintiff argues briefly that landlords are liable to tenant on the basis of a Town of Marshfield ordinance relating to keeping a dangerous dog. The ordinance provides that an "owner or keeper" of a domestic pet shall not permit the animal to "cause any person to . . . sustain a bodily injury by attacking . . . any person other than persons who are in the act of trespassing upon the private property of the owner or keeper." Plaintiff argues that because the definition of "owner or keeper" includes any person who "permits any domestic pet . . . to be kept in or about their buildings or premises," landlords are "owners or keepers" within the ordinance. Plaintiff's argument focuses on her contention that the ordinance applies to landlords in this case; she does not suggest a bridge between violation of this municipal ordinance and her claim for damages.

¶ 21. We seriously doubt that the ordinance applies to landlords here because the rule against "permitting" an animal to cause injury to another suggests some degree of control over the animal, which landlords did not have. But even if we agreed that the ordinance could apply to landlords in this case—a proposition that would require us to conclude that the off-site landlords

11

were "owners or keepers" under the ordinance because they allowed tenant to keep a dog, and that in that capacity they permitted the dog to attack plaintiff—plaintiff has not established how that fact could support her claim here. Neither of two potentially applicable strands of law involving the relationship between municipal ordinances and tort-law claims for damages applies to plaintiff's claims in this case.

¶ 22. We have recognized that in certain circumstances, safety statutes and regulations may establish the standard of care in the face of an established common-law duty. See Sheldon v. Ruggiero, 2018 VT 125, ¶¶ 24-25, 209 Vt. 33, 202 A.3d 241. This principle is embodied in the Restatement (Second) of Torts § 286, which this Court has adopted and continues to follow. Id. ¶ 24. Pursuant to this common law principle, safety statutes "do not themselves create a privately enforceable legal duty; they merely supply the standard of care in the face of an established common-law duty." Id. ¶ 25. Because, for the reasons set forth above, landlords had no common-law duty to plaintiff in this case, the general rule embodied in § 286 has no application in this case.

¶ 23. We have also recognized that, in certain circumstances, a legislative enactment may give rise to a private action in tort. Id. ¶ 16 n.5. In particular, we have applied the principle reflected in § 874A of the Restatement (Second) of Torts, which provides that "[w]hen a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation," the court may in certain circumstances "accord to an injured member of the class a right of action." Plaintiff has not adequately briefed whether this is such a case. For these reasons, we conclude that plaintiff has not established a potential claim based on the municipal ordinance.

Affirmed.

FOR THE COURT:

_____

Associate Justice

12