STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

In re Bibby 5-Lot Final Plat      {      Docket No. 189-11-10 Vtec
Subdivision & Waiver Application    {

### Decision on Cross-Motions for Summary Judgment and Dismissal

Before us on appeal is a decision by the Town of St. Albans Development Review Board ("the DRB") granting Thomas and Yu Bibby ("Applicants") final plat approval to create a five-lot subdivision from an approximately 29-acre property along French Hill Road in the Town of St. Albans, Vermont. The DRB decision also grants Applicants a waiver from the road frontage requirement for two of the resulting lots. Susan Roush and Lawrence Bruce ("Neighbors"), who own property adjacent to Applicants', have appealed the DRB decision, filing a Statement of Questions detailing 25 Questions.

Currently pending before the Court is a motion from Applicants requesting either summary judgment or dismissal of 24 of the 25 Questions. Also pending before the Court is a competing motion for partial summary judgment filed by Neighbors. Applicants are represented by Brian P. Hehir, Esq. Neighbors are represented by Annie Dwight, Esq. The Town of St. Albans, an interested person in this appeal, is represented by Vincent A. Paradis, Esq., and interested person Erik Kilburn is self-represented. Neither the Town of St. Albans nor Mr. Kilburn has filed a responsive pleading to the pending motions.

### Factual Background

For the sole purpose of putting the pending motions into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1. On July 27, 2010 Applicants submitted an application to the DRB requesting final plat approval to subdivide, into five lots, their approximately 29-acre property along French Hill Road in the Town of St. Albans, Vermont. They also sought a waiver from the road frontage requirement for two of the resulting lots (Lots 3 and 4).

2. On October 20, 2010 the DRB granted Applicants final plat approval for the proposed five-lot subdivision and also granted Applicants a waiver from the road frontage requirement for the two identified lots.

3.      Applicants' 29-acre property includes portions located in two zoning districts, the Conservation District and the Rural District, as designated by the Town of St. Albans Zoning Bylaws and Subdivision Regulations.

4.      As part of their application to the DRB, Applicants have proposed a 20-foot-wide right-of-way that is intended to operate as a shared driveway for three of the resulting lots, as well as proposed septic systems that will serve the resulting lots. The parties in this appeal debate the import of the inclusion of these improvements in the pending application.

5.      The parties also debate whether any wetlands exist on Applicants' property that warrant protection under the applicable version of the state wetland protection rules.

6.      On November 14, 2010, Neighbors appealed the DRB's decision to this Court, raising 25 Questions.

## Discussion

Neighbors have appealed the DRB's grant of final plat approval to Applicants to subdivide, into five lots, an approximately 29-acre property along French Hill Road in the Town of St. Albans. Neighbors have also appealed the DRB's grant of a waiver from the road frontage requirement for two of the resulting lots. Neighbors' Statement of Questions details 25 Questions to be determined in this appeal. Applicants have filed for either summary judgment or dismissal of 24 of the 25 Questions,[1] and Neighbors have responded with a motion for partial summary judgment concerning select Questions. Neither of the interested parties in this appeal has responded to these motions.

Although Applicants' motion here seeks dismissal of some of the Questions rather than summary judgment, Neighbors have treated Applicants' motion as one requesting summary judgment on all of the Questions addressed in the motion. Thus, we have done the same in this Decision, and we determine that the parties in this appeal have had reasonable opportunities to respond to Applicants' motion as one for summary judgment. By treating the requests for dismissal as requests for summary judgment, we are able to take into account the information offered by each party that goes outside of the text of the questions themselves. See V.R.C.P. 12(b)(6) ("If, on a motion . . . to dismiss for failure . . . to state a claim upon which relief can be

---

[1] Although Applicants' motion indicates that they seek summary judgment or dismissal for all of Neighbors' Questions, their motion makes no mention or argument as to Question 19. Consequently, we do not examine Question 19 in this Decision.

2

granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").[2]

We will grant summary judgment for a moving party if that party shows, with "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that no material facts are in dispute and that the party is entitled to judgment as a matter of law. See V.R.C.P. 56(c)(3) (2011) (amended Jan. 23, 2012);[3] V.R.E.C.P. 5(a)(2); Travelers Ins. Cos. v. Demarle, Inc. USA, 2005 VT 53, ¶ 3, 178 Vt. 570 (stating that the moving party has the burden of proof). In considering cross-motions for summary judgment, we give each party the "benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Commc'ns, 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)). That is, we "accept as true the [factual] allegations made in opposition to [each] motion for summary judgment" when determining whether there are disputed material facts, as long as those allegations are also supported by affidavits or references to other evidentiary material. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356; V.R.C.P. 56(e).

Before considering whether summary judgment is warranted for individual Questions, we clarify the scope of our jurisdiction and authority in this de novo appeal. We are limited to addressing those issues that the DRB had the authority to address when considering the application before it. See In re Torres, 154 Vt. 233, 235–36 (1990); V.R.E.C.P. 5(g).

With their application, Applicants seek both final plat approval to subdivide an approximately 29-acre property in the Town of St. Albans into five lots as well as a waiver from the road frontage requirement for two of the resulting lots. (See Appellees' Mots. for Summ. J. and to Dismiss Questions, Attachment, filed June 9, 2011.) Their application does not seek approval to complete any physical development on their property. (See id.) Following the direction of Torres, our review of this application is limited by the applicable provisions of the Town of St. Albans Zoning Bylaws and Subdivision Regulations ("the Bylaws"). See Torres, 154 Vt. at 235–36. Unless a provision of the Bylaws requires Applicants to seek and obtain approval

---

[2] All of Applicants' requests for dismissal can be characterized as falling within Rule 12(b)(6) of the Vermont Rules of Civil Procedure.

[3] An updated version of V.R.C.P. 56 took effect on January 23, 2010. However, we analyze the pending motions under the previous version of the rule because that version was in effect at the time the motions were filed. In any case, the new version of Rule 56 incorporates the familiar standard for granting summary judgment from former V.R.C.P. 56(c). See Reporter's Notes—2012 Amendment, V.R.C.P. 56.

for anticipated physical development in conjunction with their request for final plat approval and a waiver from the road frontage requirement, we do not have the authority, in this appeal, to render a decision on whether Applicants need, or can be granted, such approval. [4]

When interpreting the provisions of the Bylaws applicable to the pending appeal, we will apply the familiar principals of statutory interpretation. See In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991). That is, we will interpret the Bylaws with the goal of giving effect to the intent of the municipal legislative body that drafted them. See Town of Killington v. State, 172 Vt. 182, 188 (2001). Our examination of intent begins by considering the ordinary meaning of the plain language of the Bylaws. Id. However, we are cautioned not to accept the ordinary meaning if it would make the Bylaws ineffective or create irrational results. Id. at 189.

We keep these standards in mind as we review the pending motions on Neighbors' Questions.

## I. Questions 1 and 16

Neighbors' Question 1 asks whether Applicants' proposed subdivision complies with Bylaws § 220(1), and Neighbors' Question 16 asks if the location of the septic systems that will serve the resulting lots complies with the objective in the Bylaws for one of the districts in which Applicants' property is located. Applicants ask that we dismiss Questions 1 and 16, arguing that the questions are moot because Applicants obtained a Wastewater System and Potable Water Supply Permit from the Vermont Agency of Natural Resources ("ANR"), Permit No. WW-6-2242.

For the Court to determine that a question from a party's statement of questions is moot, the Court would need to conclude that our resolution of the question can no longer provide relief to the party raising it because the controversy the question references no longer exists. See In re Moriarty, 156 Vt. 160, 163 (1991) (describing the concept of mootness). Applicants have failed to show that Questions 1 and 16 no longer reference live controversies.

Any subdivision application submitted to the DRB must meet the requirements referenced in Questions 1 and 16. That is, the application must conform to Bylaws § 220 and, if the subdivision is to take place in the Conservation District, it must meet the specific

---

[4] The DRB's review was also so limited. In reviewing Applicants' application, the DRB granted final plat approval to Applicants for the five-lot subdivision and waived the road frontage requirement for two of the lots, based on a proposed 20-foot-wide right-of-way. The DRB did not grant approval or a permit for any physical development on Applicants' property.

4

development rules for that district that restrict final plat approval for a subdivision. See Bylaws Part II, Subdivision Regulations; Bylaws §§ 211(3), 220, 221(1), 315(2); Bylaws Part V, Definitions (defining development as including subdivision). A pre-trial showing that Applicants' application meets these requirements would not render Questions 1 and 16 moot; rather, it could be grounds for granting summary judgment in Applicants' favor.

Thus, we address whether Applicants are entitled to summary judgment on Questions 1 and 16 based on their receipt of Permit No. WW-6-224. Question 1 asks whether the proposed subdivision complies with Bylaws § 220(1) in that the property to be subdivided has "adequate capacity for on-site sewage disposal." (Clarified Statement of Questions 1, filed Mar. 15, 2011). Bylaws § 220(1) requires the following: "[l]and to be developed shall be physically suitable for the purpose with particular regard to the adequacy of on-site sewage disposal." Applicants argue that their receipt of a state wastewater permit, Permit No. WW-6-224, is conclusive proof that the subdivision complies with Bylaws § 220(1). Neighbors respond that they have evidence of wetlands on Applicants' property and that, therefore, there are disputed material facts regarding the proposed subdivision's compliance with Bylaws § 220(1).

Section 1973 of Title 10, Chapter 64 of the Vermont Statutes Annotated requires anyone who wishes to subdivide property in Vermont to first obtain a permit from ANR for a wastewater system or systems that will serve each proposed lot. Beginning on July 1, 2007, the provisions of Chapter 64, which establish "technical standards and criteria for the design, construction, operation, and maintenance" of wastewater systems, supersede any municipal bylaws that were previously operating to do the same. See 10 V.S.A. § 1976(b); Envtl. Protection Rules, Chp. 1, Wastewater System & Potable Water Supply Rules ("Wastewater Rules") § 1-501 (Sept. 29, 2007). While municipalities can continue to impose regulations that address wastewater systems as development generally, for example by imposing setbacks, the state regulations were meant to establish a comprehensive review and permitting process for wastewater systems that would have state-wide uniformity. 10 V.S.A. § 1971; Wastewater Rules § 1-501.

In the context of the proposed subdivision of land, Bylaws § 220(1) requires that the land to be subdivided is suitable for such subdivision and asks that decision-makers take into "particular regard the adequacy of on-site sewage disposal." By issuing Permit No. WW-6-2242, ANR has concluded that the proposed mound wastewater disposal systems, or septic

5

systems, that Applicants have depicted in plans and propose for the new lots in a single-family residence subdivision of their property, meet the state-wide technical standards and criteria for wastewater systems, provided the systems are constructed in compliance with the conditions established in Section 3.6 of their wastewater permit. (See Appellees' Opp. to Appellants' Mot. for Entry Upon Land, Attachment, filed May 19, 2011); Wastewater Rules §§ 1-801 to -808 (establishing the general technical requirements for wastewater systems), 1-913 (establishing the technical requirements for mound wastewater disposal systems). Essentially, the submission of Permit No. WW-6-2242 to the Court establishes a rebuttable presumption that, if Applicants construct their septic systems in compliance with that permit, there will be adequate on-site sewage disposal for the proposed subdivision.

Here, the central argument Neighbors make in opposition is that there are wetlands on Applicants' property. Characteristics of land going to its drainage—including, for instance, the depth of the soil, the rate at which water placed in the soil percolates, the height of the water table in relation to the soil, and the slope of the ground—are some of the central pieces of information ANR must consider when determining whether to grant a wastewater system and potable water supply permit. See Wastewater Rules §§ 1-805, 1-913. The existence of wetlands on Applicants' property, depending on their location and the location of the proposed wastewater systems, would directly impact the measurement of these characteristics. Thus, whether there are wetlands on Applicants' property that could affect the proposed wastewater systems is a consideration ANR necessarily took into account when issuing Permit No. WW-6-2242. Neighbors offer no information that contradicts this conclusion.

Neighbors' argument—and the evidence they reference—does not pose a challenge to the presumption that if Applicants construct the septic systems for their subdivided property in compliance with Permit No. WW-6-2242, there will be adequate on-site sewage disposal for the proposed subdivision. Rather, Neighbors' argument appears to challenge ANR's issuance of Permit No. WW-6-2242 and the findings ANR relied on in issuing the permit. Such an argument cannot be raised in this appeal, but must be raised in an appeal from the permit itself. See 10 V.S.A. §§ 8503(a)(1)(K), 8504(a). Consequently, we conclude that there are no disputed material facts as to the proposed subdivision's compliance with Bylaws § 220(1). We therefore **GRANT** summary judgment to Applicants on Question 1, answering it in the affirmative.

6

Turning to Question 16, Neighbors ask whether the location of the septic systems that will serve the lots resulting after the subdivision of Applicants' property will comply with the objective stated in the Bylaws for the Conservation District in terms of protecting wetlands. The "Objective and Description" for the Conservation District reads as follows:

> Location, topography and soil limitations make lands in this district unsuitable for intensive development. Included are areas of steep slopes and <u>wetlands</u>. Designation of this district is intended to protect the scenic and natural resources value of the lands which lack direct access to public roads, are important for wildlife and wildlife habitat, and which are poorly suited for development. Only low density residential development . . . which [is] compatible with the district purposes will be permitted.

Bylaws § 315(2) (emphasis added).

Both Applicants and Neighbors agree that a portion of Applicants' property is in the Conservation District, although Applicants claim that only one of the proposed septic systems is in that district and that it is within 100 feet of the zoning district boundary. Applicants also argue that, even if the objective is applicable, their receipt of Permit No. WW-6-224 is conclusive proof that the subdivision complies with the objective. As with Question 1, Neighbors respond here that they have evidence of wetlands on Applicants' property and that, therefore, there are disputed material facts regarding the proposed subdivision's compliance with this objective of the Conservation District.

Without determining where the boundary for the Conservation District crosses Applicants' property or whether there are wetlands on Applicants' property, as that term is defined in the Bylaws, we conclude that summary judgment is warranted in favor of Applicants on Question 16. We reach this conclusion based on our reading of the objective for the Conservation District and how it operates in the context of the application before us in this appeal.

The application before the DRB, and now before the Court, seeks final plat approval for a subdivision. While the parties have not briefed the Court on the following two legal issues, before we can determine if either party should be granted summary judgment on Question 16 we must address 1) whether the location of septic systems is incorporated into final plat approval in the Town of St. Albans, and, if so, 2) whether the objective of the Conservation District includes any enforceable regulatory language restricting the location of septic systems.

7

Bylaws § 211 requires that an applicant seeking final plat approval for the subdivision of land into three or more lots submit a proposed plat to the DRB that includes the "location and design of all required improvements (see section 221 herein)." Because Bylaws § 221 requires that "Water and Sewage Disposal Systems shall comply with all Town of Saint Albans Regulations," it appears that new septic systems are a type of improvement that must be included in applications for final plat approval. However, what, if any, wastewater systems are "required improvements" for subdivided lots is dictated by the state regulations discussed above, the Wastewater Rules. The Wastewater Rules establish state-wide uniform technical standards and criteria for wastewater systems that supersede municipal regulations doing the same and are triggered when a landowner proposes a subdivision. See 10 V.S.A., Chapter 64; Wastewater Rules § 1-501. Municipalities can regulate the location of wastewater systems in terms of imposing setbacks or other requirements applicable to the wastewater systems as a type of development generally, but most of the siting requirements are established through the state permitting system. See 10 V.S.A. §§ 1971, 1976(b); Wastewater Rules § 1-501.

Therefore, it is reasonable to conclude that Applicants were required to include the location of the proposed mound wastewater disposal systems in the proposed plat they submitted to the DRB, although the design and siting of the systems is largely a determination made by ANR. The next preliminary question the Court must answer is whether the objective of the Conservation District includes enforceable regulatory language restricting the location of septic systems during final plat approval for a subdivision.

Municipal bylaws often contain both purpose provisions and regulatory provisions. Purpose provisions are often non-enforceable but provide assistance when the interpretation of the regulatory provisions comes into question. See In re Meaker, 156 Vt. 182, 185 (1991); In re Musty Permit, No. 174-10-10 Vtec, slip op. at 2–3 (Vt. Super. Ct. Envtl. Div. Feb. 24, 2011) (Durkin, J.), appeal docketed, 2011-290. Purpose provisions can, however, include individual mandatory requirements that are enforceable. See In re Gerlach Parking Area Permit, No. 31-2-09 Vtec, slip op. at 8 (Vt. Envtl. Ct. Dec. 21. 2009) (Durkin, J.) (concluding that the requirement that a parking area "shall provide for pedestrian circulation" was an enforceable requirement despite its location within the context of a bylaw provision labeled "purpose").

The "Objective and Description" for the Conservation District quoted above is largely a purpose provision. It establishes the objective, or purpose, for the district, and provides

8

guiding principles that are helpful in interpreting the remaining provisions that the Town of St. Albans has enacted for the district. While it includes general statements that lands in the district are "unsuitable for intensive development" and only "low density residential development" and certain types of uses "will be permitted" in the district, these statements do not establish any specific restrictions for the location of wastewater systems. Bylaws § 315(2). Thus, there is no enforceable regulatory language in the objective provisions for the Conservation District restricting the location of septic systems in that District. Because such regulatory language is a necessary premise for the inquiry posed by Question 16, we **DISMISS** Neighbors' Question 16.[5]

## II.     Questions 15 and 17

Neighbors' Question 15 and 17 raise related issues about possible wetlands on Applicants' property. Question 15 is divided into four sub-questions that inquire about the proposed subdivision's compliance with § 403(1), a provision establishing setbacks for the location of "structures, roadways and parking" from "classified wetlands," streams, and Lake Champlain. Question 17 asks whether Applicants must obtain a permit from ANR under the August 1, 2010 version of the Vermont Wetland Rules.

Applicants make two principal arguments for dismissal of these Questions: 1) the Court does not have jurisdiction to review their application under the Vermont Wetland Rules because the State of Vermont has not asserted jurisdiction over any wetlands on their property, and 2) the version of the Vermont Wetland Rules that applies to their application is the version in effect when their application was filed and under which the wetlands on their property are classified as Class III. Neighbors respond that Bylaws § 220(5) requires the application before the Court in this appeal to comply with the Vermont Wetland Rules, and that the most recent version of the Vermont Wetland Rules applies retroactively to the pending application because the rules indicate that they apply to "commenced" activities. Neighbors ask for summary judgment on these Questions.

We first determine that the Vermont Wetland Rules are, indeed, applicable to the pending application. The pending application must comply with Bylaws § 220(5). See Bylaws Part II, Subdivision Regulations; Bylaws §§ 211(3), 220; Bylaws Part V, Definitions (defining

---

[5] Because we reach the conclusion that the objective of the Conservation District does not include any enforceable regulatory language, we need not examine Applicants' argument that their receipt of Permit No. WW-6-2242 establishes a presumption of compliance with that objective.

9

development as including subdivision). Bylaws § 220(5) requires a proposed subdivision to conform to the criteria found in 10 V.S.A. § 6086, commonly referred to as the Act 250 criteria. Included in the Act 250 criteria is the requirement that a project comply with the Vermont Wetland Rules. See 10 V.S.A. §§ 6001(1), 6086(a)(1)(G) (requiring demonstration by an applicant that the proposed "development or subdivision will not violate the rules of the [Natural Resources Board] . . . relating to significant wetlands"); Vermont Wetland Rules (Aug. 1, 2010). Thus, the Court must determine, in this appeal, whether the proposed subdivision conforms to the applicable version of the Vermont Wetland Rules. [6]

We also determine, for the following two reasons, that the version of the rules applicable in this municipal proceeding is that which was in effect when Applicants submitted their application on July 27, 2010. First, there is a general prohibition against the retrospective application of statutes, and their amendments, unless the laws include a clear, affirmative statement that they apply retrospectively. See 1 V.S.A. §§ 212, 214(b) ("The amendment . . . of an act or statutory provision . . . shall not (1) [a]ffect the operation of the act or provision prior to the effective date of the amendment . . . [or] (2) [a]ffect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment . . . ."); Town of Sandgate v. Colehamer, 156 Vt. 77, 90 (1990). Second, the Vermont Supreme Court has established that a landowner is entitled to review of a land use proposal under the version of the land use laws in effect at the time the landowner submits a "proper application." See In re Jolley Assocs., 2006 VT 132, ¶ 11, 181 Vt. 190 (citing In re Ross, 151 Vt. 54, 57 (1989)). In other words, the submission of a complete application for a municipal permit vests the landowner's right to its review under the land use laws existing on that date. Id. ¶¶ 11, 16.

Here, the Vermont Wetland Rules are regulations adopted by the Water Resources Panel of the Vermont Natural Resources Board under the statutory authority provided by the Vermont State Legislature in 10 V.S.A. § 6025(d)(5)-(7). The Court cannot find any clear, affirmative language in the newest version of the rules, or the statute authorizing them, that

---

[6] Applicants argue that the Court should not address this issue here because Neighbors did not include a Question in their Statement of Questions explicitly citing Bylaws § 220(5). We disagree. As discussed in In re Jolley Assocs., while the Court is confined to addressing issues raised in an appellant's statement of questions, we are not restricted to the "literal phrasing" of the questions but rather can consider issues intrinsic to the questions as phrased. 2006 VT 132, ¶ 9, 181 Vt. 190. Neighbors' Questions 15 and 17 clearly raise the issue of compliance under the Vermont Wetland Rules; we can therefore consider Neighbors' legal argument that Bylaws § 220(5) requires Applicants to comply with the Vermont Wetland Rules.

indicates they are to apply retrospectively before their effective date of August 1, 2010. While 1 V.S.A. § 214(b) speaks specifically to statutes, Neighbors have not presented us with any argument as to why the general prohibition against the retrospective application of statutes does not also extend to duly adopted regulations. Neighbors instead argue that a statement that appears in the rules—that the rules "apply to . . . land uses occurring within a significant wetland . . . that are <u>commenced</u> after February 23, 1990"—positively means they are retroactive. Vermont Wetland Rules § 1.1 (Aug. 1, 2010 and Jan. 1, 2002) (emphasis added). We assume Neighbors are arguing that this conveys that the current version of the rules applies retrospectively to projects still in the proposal stage on the date the current version became effective, that is, August 1, 2010.

We find Neighbors' interpretation unconvincing in the context of this municipal permit proceeding for two reasons. First, the quoted statement refers to the history of the Vermont Wetland Rules generally: that they were first established, and initially became effective, on February 23, 1990. Second, explicitly excluded by subsequent portions of § 1.1 are projects for which "a complete application for all local, state and federal permits . . . had been submitted as of February 23, 1990."[7] Vermont Wetland Rules (Aug. 1, 2010 and Jan. 1, 2002). The question here is what version of the rules applies in this review of Applicants' requests before a municipal panel. Neighbors have not indicated how this statement in the Vermont Wetland Rules creates an exception to the general principle that Applicants have a vested right to have their application for a municipal permit reviewed under the version of the rules in effect on the date they submitted a "proper application. " See <u>Jolley Assocs.</u>, 2006 VT 132, ¶ 11.

Moreover, Neighbors have not alleged that the application Applicants submitted to the DRB was not complete or was otherwise improper, nor does the application appear incomplete or improper on its face. (See Appellees' Mots. for Summ. J. and to Dismiss Questions, Attachment, filed June 9, 2011). Consequently, we conclude that the version of the Vermont Wetland Rules applicable in this particular municipal proceeding—review of Applicants' request for final plat approval and a waiver from the road frontage requirement—is the version which was in effect when Applicants submitted their application in July 2010.

---

[7] We note that Act 250 also refers to the date that a project "commence[s]" to describe when jurisdiction under Act 250 applies to the project. 10 V.S.A. § 6081. This language has not prevented the Vermont Supreme Court from adopting the rule that a landowner's right to the review of a proposed project vests under the land use laws in existence at the time the landowner submits a complete Act 250 application. See <u>Ross</u>, 151 Vt. at 56–57.

11

We therefore **GRANT** summary judgment to Applicants on Question 15(a), which asks whether the August 1, 2010 version of the Vermont Wetland Rules regulates the proposed subdivision. The undisputed material facts and applicable law require that we answer this question in the negative. We also **DISMISS** Questions 17 and 15(c), which ask about compliance of the pending application with the August 1, 2010 version of the Vermont Wetland Rules which do not apply here.

Thus, Questions 15(b) and 15(d) remain. The latter, Question 15(d), asks whether the proposed subdivision complies with the setbacks established by Bylaws § 403(1), a provision establishing setbacks for the location of "structures, roadways and parking" from Class I and II wetlands, stream banks, and the shore of Lake Champlain.[8] Question 15(b) asks, in the context of considering the subdivision's compliance with Bylaws § 403(1), whether the wetlands on Applicants' property are Class I or II. Neighbors argue that summary judgment cannot be granted on these Questions because whether wetlands exist on Applicants' property is a disputed material fact. Applicants argue that the Questions should be dismissed because any wetland on their property in an area potentially impacted by the subdivision is a Class III wetland and is therefore not regulated by Bylaws § 403(1).

Section 403(1) of the Bylaws establishes setbacks for streams and shoreline along Lake Champlain, as well as for Class I and II wetlands, but Neighbors have not made any allegations that Applicants' property includes streams or Lake Champlain shoreline. Neighbors' Statement of Undisputed Material Facts and memoranda allege only that wetlands are present. (See Appellants' Statement of Undisputed Material Facts, ¶¶ 6-10, filed July 11, 2011). Applicants' Statement of Undisputed Facts and memoranda also do not reveal any discussion of the presence of streams or Lake Champlain shoreline on their property. Thus, it appears that the only setbacks Question 15(d) concerns are those that Bylaws § 403(1) establishes for Class I and II wetlands. Additionally, since neither party has indicated that a Class I wetland may exist on Applicants' property, and because Class I wetlands are extremely uncommon,[9] here we are

---

[8] Neighbors do not dispute that the references Bylaws § 403(1) makes to a "Class 1 wetland" and "Class 2 wetland" are to the classifications established by the Vermont Wetland Rules. The Bylaws do not define these terms; included in the Bylaws' definition of "wetlands" generally are "[a]reas that are delineated as Class 1 or 2 wetlands on the wetland map," again an apparent reference to the Vermont Wetland Rules. See Bylaws Part V, Definitions.

[9] As of August 1, 2010, there were only three Class I wetlands identified in the entire state. See Vermont Wetland Rules, Appendix A (Aug. 1, 2010).

12

solely concerned with identifying whether the parties' filings demonstrate a dispute as to the presence of Class II wetlands on Applicants' property.

Before reaching a conclusion as to whether there are facts in dispute as to the presence of Class II wetlands, we consider whether the setbacks established in Bylaws § 403(1) apply to any aspect of Applicants' proposed subdivision. As stated above, § 403(1) establishes setbacks for the location of "structures, roadways and parking." Neighbors argue that the setbacks apply to a right-of-way and septic systems that Applicants propose as part of their subdivision.

We agree that the pending application does include the location and design for a proposed 20-foot-wide right-of-way that will operate as a shared driveway for three of the subdivided lots as well as the location of proposed septic systems that will serve the resulting lots. See Bylaws §§ 211(1) (requiring applicants to include the "[l]ocation and design of all required improvements" in applications for final plat approval), 220, 221, 401 (indicating that the DRB can grant a waiver from the road frontage requirement for lots that will have access to public roads through permanent rights-of-way of 20 or more feet). That is, approval of the location and design of the right-of-way and of the location of the septic systems is necessary for Applicants to receive final plat approval. Additionally, approval of the location and design of the right-of-way is necessary before Applicants can obtain a waiver from the road frontage requirement.

However, we do not agree that the terms "structure, roadways and parking" include rights-of-way. The term "roadways" itself is not defined in the Bylaws, but "road" is. Road is defined as "[a]n open way for public passage to include streets, roads, avenues, highways, ways, circles and the like." Bylaws Part V, Definitions. Applicants' proposed right-of-way is not an "open way for public passage"; it is a private driveway that provides for private passage. Under the plain language of the Bylaws, the proposed right-of-way is not a road and, therefore, it is also not a roadway. Furthermore, driveways are explicitly excluded from the definition of "structure" and are not parking areas. See id. (defining "structure" to exclude driveways and "parking space" as "off-street area[s] . . . exclusive of loading, access and maneuvering areas"). Thus, we conclude that the setbacks established in Bylaws § 403(1) do not apply to the location of the proposed 20-foot-wide right-of-way.

However, we agree with Neighbors that the location of the proposed septic systems is subject to the setbacks established in Bylaws § 403(1). The Bylaws define "structure" broadly.

13

A structure is "[a]nything constructed, erected or placed and which requires a fixed location on the ground in order to be used." Bylaws Part V, Definitions (emphasis added). Examples include buildings, garages, patios, retaining walls, and "other outbuildings and building features." Id. The definition excludes signs, sidewalks, driveways, fences, swimming pools with less than a 5,000 gallon capacity, and temporary docks or floats. Id. The proposed septic systems are mound wastewater disposal systems that will be constructed on Applicants' property in fixed locations. Thus, the plain language of the Bylaws provides notice to Applicants that their proposed septic systems are structures. Therefore, we conclude that the setbacks established in Bylaws § 403(1) do apply to the location of the proposed septic systems. We also note that, as discussed in Section I above, the state Wastewater Rules explicitly allow municipalities to impose setbacks upon wastewater systems although the technical aspects of the systems are established at the state level. Wastewater Rules § 1-501.

We turn next to determining whether there is a factual dispute as to the presence of Class II wetlands on Applicants' property from which the proposed septic systems would have to be set back under the requirements of Bylaws § 403(1). Under the version of the Vermont Wetland Rules that applies to the application before us in this appeal, wetlands are classified as Class II either through a determination by the Natural Resources Board or by their delineation on state-wide wetland inventory maps, maps which ANR periodically updates based on the Natural Resources Board's determinations. Vermont Wetland Rules §§ 1(d), 1(e), 4.2, 4.4, 4.5 (Jan. 1, 2002). Wetlands "contiguous to such mapped wetlands" are presumed to be Class II wetlands under this version of the rules, but no other bases for this presumption exist. Id. § 4.2. Class II wetlands are subject to protection under the Vermont Wetland Rules, but Class III wetlands, or "wetlands which are not designated as Class One or Two," are not. Id. § 4.1.

Applicants have alleged that "the site contains only Class III wetlands" under these rules. (See Appellees' Statement of Material Facts, ¶¶ 12, 13, filed June 9, 2011.) Applicants have supported this allegation with the submission of a wetlands investigation study completed by Peter Spear, a Senior Ecologist with the Natural Resource Consulting Services, and a subsequent surveyor's map that identifies the presence of seven Class III wetlands on Applicants' property. (See Appellees' Opp'n to Appellants' Mot. for Entry Upon Land, Attachment, filed May 19, 2011.) Mr. Spear's study, dated May 25, 2010, indicates that he "was

14

instructed to delineate several sensitive wetland portions of the site, but not the entire site," and that he identified only Class III wetlands. Id.

Neighbors respond by alleging that they dispute the sufficiency of the study and the accuracy of the surveyor map. (See Appellants' Statement of Disputed Material Facts 4, ¶¶ 11, 12, filed July 11, 2011). They support their allegations with an affidavit from Lawrence Bruce, Jr., one of the Appellants, in which Mr. Bruce states his belief that there are improperly delineated and classified wetlands on Applicants' property. Neighbors provide additional support through submission of a wetlands inspection completed by Dori Barton, a Senior Wetland Ecologist with Arrowwood Environmental, and an attached map that identifies the presence of several wetlands on Applicants' property, including one that Ms. Barton identifies as Class II. (See First Supplement to Appellants' Cross-Mot. for Summ. J. and Opp'n to Appellees' Mots. for Summ. J. and to Dismiss Questions, Exhibit 4, filed Sept. 30, 2011.) Ms. Barton indicates that in completing her study, dated September 29, 2011, she investigated the presence of wetlands on three of Applicants' proposed lots and concluded that there is a Class II wetland under the presumptions found in the August 1, 2010 version of the Vermont Wetland Rules.[10]

In examining the two wetland studies commissioned by the competing parties, we first note that both studies focus on particular portions of Applicants' property rather than the entire property. Neighbors do not argue that Applicants' expert, Mr. Spear, failed to examine the area in which they claim a Class II wetland exists. Neighbors' expert, Ms. Barton, also states that she "generally agreed with the wetland boundaries as delineated by Mr. Spear." (See First Supplement to Appellants' Cross-Mot. for Summ. J. and Opp'n to Appellees' Mots. for Summ. J. and to Dismiss Questions, Exhibit 4, 2, filed Sept. 30, 2011.) Thus, Neighbors' submissions do not, in fact, show that there is an actual dispute about the completeness of Applicants' study or surveyor map.

Turning to the conclusions reached by the parties' respective experts in each of their studies, we must further conclude that Neighbors' submissions do not rebut the conclusions reached by Mr. Spear that all of the wetlands existing on Applicants' property are classified as

---

[10] Ms. Barton also concluded that this same wetland falls within the definition of "wetlands" included in the Bylaws. However, we note that the Bylaws' definition of wetlands is not at issue here because the setbacks Bylaws § 403(1) establishes, which are at issue here, are reserved for "Class 1 wetland[s]" and "Class 2 wetland[s]." See Bylaws Part V, Definitions; supra note 8.

Class III under the applicable version of the Vermont Wetland Rules. That is, Neighbors' submissions do not actually dispute whether a Class II wetland exists on Applicants' property. Ms. Barton concluded that one of the wetlands Mr. Spear had classified as Class III is a Class II wetland, but her analysis and conclusion is based upon the current version of the Vermont Wetland Rules: "[i]t is my opinion that this wetland meets the presumption of a Class II wetland based on the Vermont Wetland Rules (adopted with amendments on July 16, 2010, effective August 1, 2010)." (See First Supplement to Appellants' Cross-Mot. for Summ. J. and Opp'n to Appellees' Mots. for Summ. J. and to Dismiss Questions, Exhibit 4, 4, filed Sept. 30, 2011.) Unlike the version of the Vermont Wetland Rules applicable to Applicants' proposed subdivision, the newest version of the Rules includes multiple bases for presuming a wetland to be Class II. See Vermont Wetland Rules § 4.6. Nowhere in her report does Ms. Barton indicate that she determined that the wetland is a Class II wetland under the applicable version of the Vermont Wetland Rules.

As stated earlier, we have treated Applicants' requests for dismissal as requests for summary judgment. We conclude that Applicants have met the burden of proof they bear as the party moving for summary judgment on Questions 15(b) and 15(d), questions regarding the compliance of their pending application with Bylaws § 403(1). See Travelers Ins. Cos. v. Demarle, Inc. USA, 2005 VT 53, ¶ 3, 178 Vt. 580. They have provided a factual allegation indicating that Bylaws § 403(1) is not triggered by their pending application, and they have supported that allegation by submitting evidentiary material that provides a factual foundation for their allegation. Neighbors, however, have failed to supply evidentiary support for their allegations opposing Applicants'. The evidence Neighbors have referenced and submitted does not show that Applicants' wetland study and surveyor map is insufficient. As stated earlier, we will only accept factual allegations made in opposition to summary judgment motions when the opposing party has referred to evidentiary material that supports such allegations. See Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356; V.R.C.P. 56(e).

Consequently, we **GRANT** summary judgment to Applicants on Question 15(b), resolving the query of whether Class II wetlands exist on Applicants' property in the negative, and **DISMISS** Question 15(d) because there are no wetlands from which the proposed septic systems would have to be set back under the requirements of Bylaws § 403(1).

16

III.    Questions 18 and 20–25

Neighbors' Questions 18 and 20 through 25 concern whether Applicants' proposed subdivision requires site plan approval, whether it complies with requirements of the Bylaws that are triggered when site plan review is required, and whether remand to the DRB is necessary to make these determinations. Applicants argue that site plan approval is not required for their application and that, therefore, Questions 18 and 20 through 25 should be dismissed. Neighbors respond that the proposed subdivision triggers site plan review under the provisions of Bylaws § 303 and § 411(2), and they request summary judgment only on Questions 18 and 20.

As discussed above, the application before the DRB and now before us on appeal is an application for final plat approval to subdivide a property and for a waiver from the road frontage requirement for two of the five proposed lots. It does not request site plan approval. Thus, we turn to the provisions in Bylaws § 303 and § 411(2) to determine if either provision requires Applicants' proposed subdivision to undergo site plan review before it receives final plat approval and a waiver from the road frontage requirement.

We turn first to Bylaws § 303. Section 303 requires the DRB to complete site plan review of "uses other than forestry, agriculture or single and two family dwellings on single lots." The Bylaws define "use" as "[t]he specific purpose for which land or a building is arranged, designed, or intended, or for which it is or may be occupied or maintained." Bylaws Part V, Definitions. Neighbors argue that Applicants have proposed the use of a "five lot, single-family residential subdivision" and that the DRB's grant of a waiver to Applicants from the road frontage requirement for two of the five proposed lots was based on this proposed use. (Appellants' Cross-Mot. for Partial Summ. J. and Opp'n to Appellees' Mots. for Summ. J. and to Dismiss Questions 10, filed July 11, 2011.)

We disagree with Neighbors' characterization of Applicants' proposed subdivision as a development proposal that incorporates a proposed use for the subdivided lots. The Vermont Supreme Court has previously spoken to the "limited role for subdivision review" under the statutory scheme for the municipal regulation of land development established by 24 V.S.A, Chapter 117. See In re Appeal of Taft Corners Assocs., 171 Vt. 135, 137–38, 141 (2000). In Appeal of Taft Corners, the Court drew a distinction between what it described as zoning regulations and subdivision regulations, explaining that the latter allow an "owner to divide the

17

land and create the infrastructure" while the former allow the owner to "develop the parcels by placing one or more structures on them."[11] Id. at 138. The Court went on to explain that "subdivision review is not intended to police prospective uses of the subdivided lots" and that "the act of subdivision does not restrict those uses." Id. at 141.[12] The Court concluded that "there is no requirement that the subdivider know what uses will be placed on [the subdivided] lots" by future owners of the property. Id.

Bylaws § 303 requires site plan review for specific uses, rather than for specific types of development. As indicated above, the Bylaws define a use as the "purpose for which land or a building is arranged, designed, or intended," while "development" refers to the subdivision of land and any physical development of the land. See Bylaws Part V, Definitions (emphasis added). Bylaws § 300, which introduces Part III of the Bylaws, or the "Zoning Regulations," lists five different "types of land development" that are subject to the zoning regulations in §§ 300–322, including the "[c]hange or expansion of the use of . . . land." Bylaws § 300(3) (emphasis added). None of the five types of development describes the subdivision of land. Id.

Recognizing that Vermont's statutory scheme for the municipal regulation of land development establishes a distinction between subdivision and zoning regulations, we conclude that Applicants' request for final plat approval and a waiver from the road frontage requirement constitutes a proposal for a type of development under the Bylaws but does not establish a particular property use. Therefore, the application does not trigger site plan review under Bylaws § 303. Even if we were to understand the DRB's grant of the waiver from the road frontage requirement to be conditioned upon a particular future property use, nothing in § 303 requires the DRB to conduct site plan review for that use now. Rather, site plan review under § 303 would be triggered when a zoning permit is sought for the physical development of individual lots that falls within the types of development listed in Bylaws § 300 and establishes a property use that requires site plan review under Bylaws § 303.

---

[11] While this Court has encountered at least one municipality that incorporates subdivision review within its zoning regulations, the choice a municipality makes to organize its bylaws in that fashion does not negate the distinction described in Appeal of Taft Corners, a distinction compelled by the statutory scheme set forth in Title 24 V.S.A., Chapter 117. See In re Paynter 2-Lot Subdivision, No. 160-7-08 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 1, 2009) (Wright, J.), aff'd, 2010 VT 28.

[12] However, the Vermont Supreme Court does indicate that municipal panels can deny proposed subdivisions when the resulting lots would be unable to be lawfully developed. See Appeal of Taft Corners, 171 Vt. at 141.

18

We turn next to Bylaws § 411(2). Section 411(2) requires site plan approval for "[a]ny land alteration or excavation that would cause a substantial change in the volume, velocity or direction of drainage." Neighbors argue that the application before the DRB, and now before us on appeal, sought approval for the construction of a proposed 20-foot-wide right-of-way and septic systems that will serve the subdivided lots. Applicants do not directly respond to Neighbors' contention, but absent from Applicants' filings is any assertion that they sought approval for any construction on their property.

Unlike Neighbors, we do not read the application before us to request approval to complete any type of physical development on Applicants' property. (See Appellees' Mots. for Summ. J. and to Dismiss Questions, Attachment, filed June 9, 2011.) In other words, we do not read the application as seeking authority for Applicants to complete any land alteration or excavation on their property as discussed in Bylaws § 411(2). Nor have Applicants put forth an argument that it does seek such approval. Applicants seek only final plat approval and a waiver from the road frontage requirement for their proposed subdivision.

Under the Bylaws, an applicant seeking final plat approval is required to identify the location and design of proposed improvements on a plat. Bylaws §§ 211(1), 221. The DRB is required to review the plat and determine whether it complies with the development standards included in Bylaws § 220 and § 221. Bylaws § 211(3). We do not find anything in these provisions that would require the DRB to review and approve the construction of proposed improvements. See also 24 V.S.A. § 4418(1)(B). Rather, we understand the DRB's review of a final plat to require the review and approval of the designation of proposed improvements, not their construction. Additionally, in reviewing the requirements for a road frontage waiver, we do not find anything in Bylaws § 400 or § 401 that would require approval of the construction of the proposed right-of-way before a waiver can be granted. See also 24 V.S.A. § 4412(3). Here, again, we understand the review involved with the granting of a waiver to be solely for the designation of a qualifying right-of-way, not its construction. [13]

---

[13] We do not decide here whether the Bylaws require Applicants to obtain site plan approval or a zoning permit in order to complete their proposed 20-foot-wide right-of-way or septic systems; we simply decide that the application before us, and before the DRB in the proceeding below, did not seek or require approval for any such physical development. We note that Bylaws § 212(3) requires a subdivider to pay for the construction of any "required improvements" as a condition of final plat approval, but that provision, on its own, does not require review of the construction of such improvements as part of final plat approval.

19

The distinction between designation approval and construction approval for a right-of-way proposed in connection with a subdivision application was also recognized in In re Appeal of Baker and Johns. See No. 200-10-04 Vtec, slip op. at 1, 2 (Vt. Envtl. Ct. Mar. 29, 2005) (Durkin, J.). In Appeal of Baker and Johns, this Court ultimately approved a two-lot subdivision and the location of a proposed right-of-way but stated that no construction or use of the right-of-way could occur until a permit was issued for that construction. Id.; Appeal of Baker and Johns, Nos. 200-10-04 Vtec and 39-2-06 Vtec, slip. op. at 1, 2 (Vt. Envtl. Ct. Jul. 31, 2006) (Durkin, J.),[14] aff'd, In re Appeal of Baker and Johns, No. 2006-364, (Vt. May term, 2007) (unpublished mem.). The Vermont Supreme Court affirmed this Court's decision, indicating that the "purpose of the proposed access way was manifest—to designate an access way" and that "any future development or use of the access way would have to be reviewed by the planning commission." Appeal of Baker and Johns, No. 2006-364, slip op. at 4.

We conclude that, because Applicants have not sought approval for any physical development on their property, and because the Bylaws do not require Applicants to seek and obtain approval for anticipated physical developments in conjunction with their request for final plat approval or a waiver from the road frontage requirement, the application before us does not trigger site plan review under Bylaws § 411(2). That is, in addressing the pending application, we cannot issue a decision approving any land alteration or excavation that would trigger the application of Bylaws § 411(2).

Because we conclude that the Applicants' proposed subdivision does not require site plan approval under Bylaws § 303 or § 411(2), we **DISMISS** Neighbors' Questions 18 and 20 through 25.

## IV. Questions 5, 6, 8, and 9

Neighbors' Questions 5, 6, 8, and 9 address compliance with provisions in the Bylaws that regulate the safety impacts of a proposed subdivision. The Questions specifically ask about potential impacts from the proposed 20-foot-wide right-of-way that will operate as a shared driveway for three of the subdivided lots. Applicants ask the Court to grant summary

---

[14] The proceeding for Appeal of Baker and Johns was coordinated with the proceeding for In re Chipman Hill Estates PUD, an appeal of a decision approving an amendment to the planned unit development containing the property proposed for subdivision. See Nos. 200-10-04 Vtec and 39-2-06 Vtec, slip. op. at 1 (Vt. Envtl. Ct. Jul. 31, 2006) (Durkin, J.). The amendment application included the same proposed right-of-way as was included in the subdivision application, and the Court's distinction between designation and construction of the right-of-way also pertained to the amendment application. See id. at 1, 2.

judgment in their favor on these four Questions, arguing that there is no factual dispute as to the safety and adequacy of two proposed curb cuts, or access points, that will allow access from three of the subdivided lots onto French Hill Road. Applicants also argue that there is no evidence that the proposed right-of-way will create unsafe conditions. Neighbors respond that the allegations and evidence referenced and submitted by Applicants do not show how the proposed right-of-way complies with the provisions of the Bylaws raised in Questions 5, 6, 8, and 9.

Question 5 poses the query of whether the proposed right-of-way meets the requirement in Bylaws § 220(4) that a "proposed development shall not cause unreasonable congestions or unsafe conditions on the affected public or private roads." Neighbors' Question 5 specifically asks if the right-of-way will cause unsafe conditions on French Hill Road and a private road on Neighbors' property that they describe as a logging road. As discussed in Section II above, the location and design of the proposed right-of-way is included in the pending application and approval of the location and design is required before an applicant can obtain final plat approval. See Bylaws §§ 211(1), 211(3), 220, 221. Thus, in order for the Court to issue summary judgment in Applicants' favor on Question 5, Applicants must show that the location and design of the right-of-way complies with Bylaws § 220(4).

Applicants have put forward no allegations in their Statement of Material Facts that address the potential safety impacts on nearby roads from the location and design of the right-of-way. Instead, in support of their request for summary judgment on Question 5, they have simply submitted a letter from the St. Albans Town Fire Department approving two curb cuts,[15] one of which will provide an access point to the proposed right-of-way from French Hill Road. While the letter approves the access point for the proposed right-of-way onto French Hill Road, it is not clear from the letter what the fire department official considered when determining whether to approve the access point. The letter simply states that "[a]ccess is sufficient for apparatus to approach," implying that the fire department may have been solely concerned with the ability of department vehicles to reach either the right-of-way or the subdivided lots it is to serve. (See Appellees' Mots. for Summ. J. and to Dismiss Questions, Attachment, filed June 9, 2011.)

---

[15] Applicants have also submitted a letter from the St. Albans Town Fire Department that Applicants state approved the same two curb cuts. However, the letter appears to instead approve one or more culverts. (See Appellees' Mots. for Summ. J. and to Dismiss Questions, Attachment, filed June 9, 2011.)

21

Considering the plain language of Bylaws § 220(4), the provision seeks to prevent development that would cause "unreasonable congestion or unsafe conditions" on public and private roads. Question 5 asks whether the proposed right-of-way creates such conditions. We cannot conclude, solely from the letter Applicants have submitted, that their proposed right-of-way will not cause "unreasonable congestion or unsafe conditions" on the nearby French Hill Road or private road on Neighbors' property. In other words, Applicants have failed to show they are entitled to summary judgment on Question 5. We therefore **DENY** them such judgment.[16]

Question 6 asks whether the proposed subdivision complies with Bylaws § 221(1)(B) which requires that a subdivision "wherever feasible . . . utilize common driveways for adjacent lots." Thus, Applicants must show that their application meets Bylaws § 221(B) before we can grant them summary judgment on Question 6. Applicants' Statement of Material Facts includes the allegation that three of the five subdivided lots will share a driveway, the proposed right-of-way. Applicants' allegation is supported by their submission of the surveyor's map, dated September 11, 2010, that shows the proposed right-of-way and its relationship to three of the subdivided lots. (See Appellees' Mot. for Summ. J. and to Dismiss Questions, Attachment, filed June 9, 2011.)

Neighbors argue that summary judgment is not warranted on Question 6 because Applicants have not claimed that it is infeasible for four of the lots to share a driveway, or for all five of the lots to share a driveway. We agree. Because a determination of whether Bylaws § 221(1)(B) is met by the proposal before us requires a factual inquiry into the feasibility of other alternatives for the location and design of driveways that will service the five subdivided lots, we must **DENY** summary judgment for Applicants on Question 6.

Questions 8 and 9 ask whether the proposed right-of-way complies with provisions in Bylaws § 221(2). The two Questions reference the requirements of these provisions but fail to recognize that the requirements pertain only to "roads." See Bylaws § 221(2) (requiring that the "[d]esign of <u>roads</u> . . . shall be constructed logically in relation to the topography" and that "[w]herever feasible, <u>roads</u> shall be laid out . . . to utilize intersections that provide" the highest

---

[16] We note that Applicants have also put forward a second argument for summary judgment on Question 5, posing the challenge that Bylaws § 220(4) is unenforceable because it is unconstitutionally vague and violates a landowner's due process rights. As discussed in Section VI below, we do not agree that Bylaws § 220(4) is unconstitutional.

service and safety) (emphasis added). As discussed in Section II above, the Bylaws define "roads" as an "open way for public passage." Bylaws Part V, Definitions. Because the proposed right-of-way is a private driveway that will provide for private passage, it does not fall within the Bylaws' use of the term "road." Thus, the provisions of the Bylaws raised in Questions 8 and 9 do not apply to the application before us, and we **DISMISS** Questions 8 and 9 from this appeal.

## V.     Questions 13 and 14

Neighbors' Questions 13 and 14 concern whether Applicants are entitled to a waiver from the road frontage requirement based on the proposed 20-foot-wide right-of-way under Bylaws § 400(1) and § 401. Question 13 asks if Applicants' proposed subdivision complies with Bylaws § 400(1), a provision prohibiting any development without "an adequate means of access" through either "[f]rontage . . . on a maintained public road, private road" or "means of a permanent easement at least 60 feet wide to a maintained public road or public waters" except when a waiver of this requirement is granted under Bylaws § 401. Question 14 asks if the proposed subdivision complies with Bylaws § 401 which prohibits any development on lots without frontage on a public road "unless a permanent right-of-way, of at least twenty feet in width and approved by the Development Review Board, provides access to not more than two single-family dwellings that do not have adequate road frontage."

As indicated in Section III above, the term "development" as used in the Bylaws includes the subdivision of land. See Bylaws Part V, Definitions. Thus, the requirements in Bylaws § 400(1) and § 401 do regulate Applicants' proposed subdivision. Because Applicants do not allege that they can meet the frontage requirements of § 400(1) without a waiver under § 401, both parties agree that two of Applicants' subdivided lots require a waiver under § 401. Therefore, whether Applicants can be granted summary judgment on Questions 13 and 14 depends on whether they have met their burden of proof to show that they are entitled to a waiver under Bylaws § 401.

Applicants argue they are entitled to summary judgment on Questions 13 and 14 because they have proposed a 20-foot-wide right-of-way that will operate as a shared driveway for three of the subdivided lots, including the two that lack frontage on a public or private road or by means of a 60-foot easement. Applicants have supported this allegation through submission of an e-mail requesting a waiver from the road frontage requirement for a "60'

23

ROW (with a 20' road on it)" and through their submission of the surveyor's map, dated September 11, 2010, that shows the proposed 20-foot-wide right-of-way and its relationship to the subdivided lots. (See Appellees' Mot. for Summ. J. and to Dismiss Questions, Attachment, filed June 9, 2011.)

Neighbors also request summary judgment on Questions 13 and 14. Neighbors argue that Bylaws § 401 is not met by the proposed right-of-way because the right-of-way is intended to serve three lots. Neighbors read § 401 to restrict a qualifying right-of-way to serving two lots total, regardless of whether any of the lots have adequate frontage under Bylaws § 400(1).

We disagree with Neighbors' interpretation of Bylaws § 401. Instead, we read the plain language of that provision to limit the amount and type of development lacking adequate frontage that can be served by a right-of-way of 20 feet in width or more. It does not restrict the amount and type of development with adequate frontage that can be served by the same right-of-way.

Nevertheless, we conclude, for a different reason, that summary judgment is not appropriate for either party on Questions 13 and 14. Because our Decision today does not reach a resolution on whether the location and design of the proposed right-of-way, and the other two driveways included in Applicants' proposed subdivision, meet the requirements of Bylaws § 221(1)(B) — which requires subdivided lots to utilize common driveways wherever feasible — we cannot reach a final resolution of whether Applicants are entitled to a waiver from the road frontage requirement for the two identified lots. Consequently, we **DENY** summary judgment to both parties on Questions 13 and 14.

## VI.   Questions 2–5, 7, and 10–12

We examine the final Questions in Neighbors' Statement of Questions for which Applicants seek summary judgment by first addressing Question 12. Question 12 asks about the proposed subdivision's compliance with Bylaws § 304(1)(K)(5). This provision allows the DRB to impose additional conditions and safeguards when granting approval for variances and conditional uses under the standards provided in the Bylaws. See Bylaws § 304(1)(K)(5).

The application before the DRB, and before this Court on appeal, is for final plat approval and a waiver from the road frontage requirement; it is not for a variance or a conditional use. Although Applicants do not argue that Bylaws § 304(1)(K)(5) is inapplicable to the pending application and therefore outside our authority to address in this appeal, we must

24

address this unstated jurisdictional concern. See V.R.C.P. 12(h)(3) ("Whenever it appears by the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); V.R.E.C.P. 5(a)(2). Our jurisdiction in this appeal is limited to addressing issues that the DRB had the authority to address when considering the application before it. See In re Torres, 154 Vt. 233, 235–36 (1990); V.R.E.C.P. 5(g). Neither the DRB, nor this Court, had or has the authority to issue variance approval or conditional use approval based on Applicants' submission of the pending application. Consequently, we conclude that Question 12 must be **DISMISSED** because it does not raise an issue over which we have jurisdiction in this appeal.

The remaining Questions, Questions 2–5, 7, and 10–11, pertain to the proposed subdivision's compliance with Bylaws § 220(2), § 220(3), § 220(4), § 221(1)(C), and § 221(6), provisions that the pending application must meet in order for Applicants to obtain final plat approval. See Bylaws Part II, Subdivision Regulations; Bylaws § 211(3); Bylaws Part V, Definitions (defining development as including subdivision). Applicants request summary judgment for these seven Questions, including Question 5, which has also been addressed in Section III above. Applicants argue that the provisions raised by these seven Questions violate a landowner's due process rights and are therefore unconstitutional because they provide the DRB, and this Court, with standardless discretion when reviewing applications for final plat approval. Neighbors respond that the provisions are not standardless but instead provide specific standards that guide their enforcement by the DRB and this Court. In addition, Neighbors seek summary judgment on Question 7 specifically, arguing that Applicants' proposed subdivision clearly violates Bylaws § 221(1)(C).

Our Supreme Court has made clear that standardless land use regulations are not acceptable because they raise both equal protection and due process concerns. See, e.g., In re Pierce Subdivision Application, 2008 VT 100, ¶ 19, 184 Vt. 365 (citing In re Handy, 171 Vt. 336, 345–46 (2000)). The principle case identifying a standardless bylaw is In re Appeal of JAM Golf, LLC, 2008 VT 110, 185 Vt. 201. In Appeal of JAM Golf, the Vermont Supreme Court found two bylaws unconstitutional because they simply required the design of a planned residential development to "protect" natural resources such as "scenic views" or "wildlife habitats."[17] Id. ¶¶ 4, 18. The Court concluded that the term "protect" did not clearly identify the level or kind

---

[17] One of these bylaws was a provision that required compliance with the municipal plan, which itself included a requirement to protect select natural resources.

of protection the municipal panel tasked with reviewing applications for planned residential development should find acceptable. See id. ¶¶ 13–14, 18. The Court also concluded that the bylaws, as a whole and in conjunction with the municipal plan they referenced, did not clearly identify what in the municipality constituted the natural resources identified for protection; the Court found the "zoning scheme [to be] confusing" at best. Id. ¶ 18. The Court explained that, without specific standards, the bylaws "provide[] no guidance as to what may be fairly expected from landowners" whose property appears to contain one of the named natural resources and who seek to create a planned residential development. Id. ¶ 14.

Examining the provisions referenced by Questions 2–5, 7, and 10–11, we cannot agree with Applicants that these provisions provide the DRB or this Court with the same unbridled discretion as the bylaws discussed in Appeal of JAM Golf. First, most of them make use of the word "shall," alerting a landowner that they are mandatory, rather than discretionary, requirements. Bylaws §§ 220(3), 220(4), 221(1)(C), 221(6). Second, they all provide a landowner with specific guidance as to what impacts a proposed subdivision must avoid to be approved by the DRB or this Court on appeal: the proposal "should demonstrate due regard for the protection of existing" natural and cultural features of the area; "shall be compatible with adjacent uses"; shall provide sufficient open space for recreation and to safeguard the privacy of the area inhabitants"; "shall not cause unreasonable congestion or unsafe conditions on the affected public or private roads"; shall "[p]roduce the safest, most healthful and attractive building sites" based on the natural features on the property; shall retain or require vegetation "for reasonable screening and aesthetic purposes"; and shall maintain or enhance vegetated buffers along stream banks "for filtration, erosion control and aesthetic purposes." Bylaws §§ 220(2), 220(3), 220(4), 221(1)(C), 221(6).

Instead of requiring the generic protection of natural resources without specifying what level or kind of protection must be achieved, the plain language of the above-quoted provisions of the Bylaws describe specific objectives Applicants' proposed subdivision must meet and for what ends. The provisions provide sufficient direction so as to avoid the equal protection and due process infirmities about which the Pierce Subdivision and JAM Golf Courts cautioned. We conclude that each of the challenged provisions do not suffer the constitutional infirmity Applicants allege and therefore **DENY** summary judgment to Applicants on Questions 2–5, 7, and 10–11.

26

We also **DENY** summary judgment to Neighbors on Question 7 because we cannot conclude, from the factual allegations before us, that the proposed subdivision fails to meet the requirements of Bylaws § 221(1)(C). Our inquiry into whether Applicants meet this and the other provisions discussed in Questions 2-5 and 10-11 is heavily fact-based and thus can only occur after the presentation of evidence at a merits hearing.

## Conclusion

For the reasons detailed above, we issue the following ruling on the pending cross-motions, which address 24 of the 25 questions in Neighbors' Statement of Questions. We **GRANT** summary judgment to Applicants on Questions 1 (answering it in the affirmative), 15(a) (answering it in the negative), and 15(b) (answering it in the negative). We **DISMISS** Questions 8, 9, 12, 15(c), 15(d), 16, 17, 18, 20, 21, 22, 23, 24, and 25. We **DENY** summary judgment to Applicants on Questions 2, 3, 4, 5, 6, 7, 10, 11, 13, 14, and we also **DENY** summary judgment to Neighbors on Questions 7, 13, and 14.

Therefore, Questions 2-7, 10, 11, 13, 14, and 19 remain for resolution at trial. We direct all of the parties in this case to submit, by **March 16, 2012**, a list of unavailable dates in the months of April and May, 2012, for a trial in the Franklin Country Courthouse in the Town of St. Albans, Vermont. The parties should also indicate, in their letters to the Court, whether a one-day trial will be adequate for a full presentation of the issues remaining in this appeal. If an additional day or days will be required, the parties should indicate their estimate on trial duration in their letters. The Court will thereafter notify the parties of the trial date or dates.

Done at Newfane, Vermont this 2nd day of March, 2012.

_____
Thomas S. Durkin, Environmental Judge